## WRIGHT v. CITY OF DONIPHAN, Appellant.

### Division Two, October 27, 1902.

1. **Public Road: PROOF OF ESTABLISHMENT.** The fact that a strip of ground was a part of a public state road may be shown by an act of the Legislature of 1857, which designates commissioners "to view and mark out the road," and by a general statute then in force which required all state roads to "be marked out sixty feet wide," and by the report of the commissioners of their survey which was ordered approved and filed by the county court, and by a subsequent special act of the Legislature confirming and ratifying the action of the commissioners and directing the several county courts along the route "to cause said road to be opened according to the location and survey thereof."

2. ————: **LOCATION: EVIDENCE.** If it is shown by the county clerk that the report of the commissioners appointed by the Legislature to view and mark out a road had been burnt and destroyed, then the actual location of the road may be shown by the oral testimony of the surveyor who subsequently surveyed it at the request of the private claimant, and by a witness who pointed out to such claimant the actual lines of the road after it had been located and traveled, and who owned the land on both sides thereof.

Wright v. City of Doniphan.

3. ——: REDUCTION OF WIDTH BY LEGISLATURE: GENERAL STATUTE OF 1865. The general law of 1865 (G. S. 1865, p. 290, sec. 5) did not reduce to a width of forty feet, public roads which had theretofore been established by special legislative acts at sixty feet. It applied, by its own terms, only to roads subsequently established.

4. ——: ASSESSMENT TO PRIVATE PERSON: EQUITABLE ESTOPPEL. The assessment by the city authorities for city taxes of a part of a public road to the private claimant who had taken possession thereof and erected a building thereon, does not estop the public, for whom the city was a trustee in its governmental capacity, from setting up title to such land.

5. ——: ——: ——: KNOWLEDGE PRESUMED. The person who encroaches upon a public road must know, as a matter of law, that the highway was there, and its width.

6. ——: EQUITABLE ESTOPPEL: BAR TO RECOVERY. Neither the failure of the city to prosecute a private person who encroaches upon a public highway, nor his occupancy thereof for ten or twelve years without objection from the city which succeeded to the rights of the State in the road, nor the assessment and collection of taxes from him, estops the city from setting up title to the land so encroached upon.

7. ——: LIMITATIONS AGAINST STATE OR CITY. An illegal appropriation of a public road after the enactment of the statute declaring that limitations do not run against the State, does not bar a city, which as to that part of a public road lying within its boundaries represents the sovereignty of the State, from recovering from a private citizen so much of the public road as had been occupied by him for more than ten years.

Appeal from Ripley Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED.

*John M. Atkinson* for appellant.

(1)  The court erred in giving instruction 2 for plaintiff. The evidence shows that plaintiff built his hotel on a part of the twenty foot strip in dispute in the year 1883, while this street was a public road, and that defendant city was incorporated in the year 1886, and the city could not be estopped because it had not seen fit to order the hotel removed,

and the street graded down, as it was doing at the beginning of this suit. 2 Dillon on Municipal Corp. (3. Ed.), sec. 686; St. Louis v. Railroad, 114 Mo. 24; Brown v. Carthage, 128 Mo. 10; Williams v. St. Louis, 120 Mo. 403. (2) The city had not the authority to assess and collect any tax on the strip in dispute, and can not be estopped because it did. Hannibal v. Draper, 36 Mo. 337; St. Louis v. Gorman, 29 Mo. 593; Buschmann v. St. Louis, 121 Mo. 537. (3) As Lee, under whom plaintiff claims, was a trespasser in taking possession of the land in dispute while it belonged to the county as a public highway, the title of plaintiff could never ripen into title by adverse possession as against the county or the defendant city, and this has been the law since 1865. Sec. 4270, R. S. 1899, enacted in 1865; Brown v. Carthage, supra; St. Louis v. Railroad, 114 Mo. 13; Williams v. St. Louis, supra; State v. Warner, 51 Mo. App. 174; State v. Culver, 65 Mo. 607; Ins. Co. v. St. Louis, 98 Mo. 422. (4) (a) Defendant city can not be estopped because plaintiff as a trespasser entered upon the twenty foot strip of the street in dispute and erected a hotel on a part of same prior to the time the city was incorporated, and because defendant did not see fit to improve its street and remove the obstruction placed thereon by plaintiff. The defendant had the right to wait until it saw fit to improve its street. St. Louis v. Railroad, supra; Williams v. St. Louis, supra; Ins. Co. v. St. Louis, supra. (b) It is a well-settled rule in this State that a contract or act that could not be legally done in the first place, or permitted, can not be made legal by estoppel. State ex rel. v. Murphy, 134 Mo. 548; Wheeler v. Poplar Bluff, 149 Mo. 36; Union Depot Co. v. St. Louis, 76 Mo. 393; Heidelberg v. St. Francois Co., 100 Mo. 69; Dougal v. Fryer, 3 Mo. 40; Joeckel v. Easton, 11 Mo. 40; 2 Dillon on Municipal Corp. (3 .Ed.), secs. 667 and 675. (c) It is also the law that a county or city can not convey its title to the roads or streets by deed or lose same by ad-

verse possession for any length of time. Sec. 4270, R. S. 1899; St. Louis v. Railroad, supra; Williams v. St. Louis, supra; Brown v. Carthage, supra; State v. Culver, supra; State v. Warner, supra; 2 Dillon Mun. Corp. (3 Ed.), sec. 650. (d) The mere assessment and collection of a city tax on this twenty foot strip together with the other land platted, works no estoppel against the defendant city, in this suit. St. Louis v. Gorman, 29 Mo. 593; Hannibal v. Draper, 36 Mo. 332.

*J. C. Sheppard* for respondent.

(1) A public road may be established by a record, by dedication, or by prescription. If it is to be established by prescription, or long continued user merely, the location and width will be fixed by the part so shown to have been used. Ehert v. Railroad, 20 Mo. App. 251. (2) There is no record of the county court, or otherwise, showing the location of the Doniphan and Pilot Knob road, or the street, to have been over the lands sued for, and the oral evidence fails to show that the road ever did run across any part of the lots in suit, and clearly shows that the street never did run over or across the lots since the incorporation of the town. (3) Instruction 2, asked by appellant, was properly refused; because, it is not the law that every one must know, as a matter of law, where a road runs that is established by prescription merely, as in this case. To hold otherwise would create a presumption that every person knew all facts as well as the law. (4) A municipal corporation may have equitable estoppel asserted against it in a proper case, and this is such a case. 2 Dillon on Mun. Corp. (3 Ed.), sec. 675; Smith v. City of Osage, 80 Iowa 84; Los Angeles v. Cohn, 101 Cal. 373; Simplot v. Railroad, 16 Fed. 360; Crocker v. Collins, 37 S. C. 327, 15 N. E. 951; Fresno v. Irrigation Co., 98 Cal. 182; Brooks v. Riding, 46 Ind. 15.

(5)  The undisputed evidence in this case shows that prior to 1886, when the town was incorporated, there was a road running along by the east side of the lots in dispute; it is uncertain whether said road was actually used to a greater width than forty feet, or whether any part of the road was used over these lots; D. A. Lee platted these lots in 1883, leaving the street forty feet wide, and witnesses Mabrey, Naylor and Wright and all of them say, "the road never ran there any more after that." Lee's deed called for these lots, all of them, including the land in dispute, and he would not have had his correct amount without this strip. He left for the town a legal forty-foot street, or road as it was then. The public has lost nothing. He, by his plat, dedicated this forty-foot street, and no more, to the public. The city incorporated in 1886 with this plat and this street so dedicated forty feet wide, accepted it as such and never was entitled to anything more. Respondent bought the land under all these conditions, not knowing that any claim existed to a street over any part of it. The city assessed it to respondent for fourteen years and collected the taxes. No attempt is made to widen the street by the city authorities, and only "street talk" is heard about it, and this never reaches the ears of the respondent, and we submit that, if there ever was a case where equitable estoppel should be applied against a city, this is one, and no court of equity, in our judgment, should, under the facts in this case, deprive respondent of his property.

GANTT, J.—The controversy in this case is between the city of Doniphan and the plaintiff, who claims a strip of land which the city insists is a part of one of its public streets.

The questions which must be answered are three:

First, was the strip in question ever a portion of a public state road?

Second, was that road ever lawfully reduced from a width of sixty feet to one of forty feet?

Third, notwithstanding it shall appear that this strip was at one time included in the Pilot Knob and Doniphan state road, and notwithstanding said road has never been reduced in width by any act of the Legislature, or judgment of the county court, or city council, is the city not estopped from claiming it as against plaintiff, who bought it of Daniel Lee and built a hotel thereon, with the knowledge of the city and county officials, without official interference?

The strip is alleged to be 131½ feet long and about 25 feet wide at the south end, and 16 feet wide at the north end.

Ouster was laid as of January 29, 1898. The answer admits the city's possession and justifies on the ground that the strip is a portion of what was once the Pilot Knob and Doniphan State road, and that by the incorporation of it into the city of Doniphan this strip became and continued to be a part of one of its highways or streets, to the control and possession of which it had a right. The reply asserts that if it should appear that this was a part of a state road or street, the defendant is estopped for the reason that it suffered plaintiff to take charge and possession of it and build a large hotel on it, and defendant has taxed it since 1886 as plaintiff's property, and plaintiff has paid taxes so assessed to defendant city.

I. The plaintiff deraigns title through Daniel Lee. The southwest quarter of the northwest quarter of section 26, township 23, range 2 east, in Ripley county, was patented in 1837 to George Lee. By warranty deed in 1853, George Lee conveyed to William Russell that portion of said forty acres "lying east of lots 15, 16, 17 and 18, in the town of Doniphan." The patent and these deeds were duly recorded.

On March 15, 1859, Russell and wife by warranty deed conveyed this last-mentioned tract to Lemuel Kittrell, by the

description, "That part to the east of the town of Doniphan joining lots 15, 16, 17 and 18, and south of Nicolas Byars's spring branch, and west of the main *state* road," containing one acre more or less.

Kittrell died testate, having devised this same tract to his wife, Lorena Kittrell. By her deed of October 5, 1866, Mrs. Kittrell conveyed, by the same description, this one acre to Fairchild, and Fairchild by the same description conveyed this acre, more or less, to Daniel A. Lee. In 1883, Daniel Lee platted and laid off an addition to the town of Doniphan on this acre tract and included in it the strip of land now in controversy and designated it as part of lots 1 and 2 of block 1 of Lee's addition. His action at that time is the origin of this litigation. When Lee took the surveyor, Captain Naylor, on the ground to make the survey for his addition, Mr. Thomas Mabrey, who owned the lands on one side of what was then generally known and recognized as the state road from Doniphan to Pilot Knob, was present.

Captain Naylor testified as follows:

"Q. Now, what did Lee do about that twenty feet, do you recollect   A. After we measured across and had driven the corner, Mabrey's corner, Mabrey was standing there and I started back and Dan Lee came up and come between me and Mr. Mabrey. We were not over six or seven feet apart and he proposed to Mr. Mabrey to take one of the ten feet of the forty, one-half of it, and he would take the other. Mabrey says to him, 'No, we want the full sixty-foot street here, and I will not take it.' Mr. Lee says, *'Then if you do not take it I will take it myself.'* Mr. Lee says to me, 'Well, measure out to where the forty-foot street—leave a forty-foot street.'

"Q. Then when you made that plat you included these lots in his (Lee's) addition? A. Yes, sir.

"Q. You included that twenty feet in it? A. Yes, sir.

"Q. And staked it out as such, including that twenty feet? A. Yes, sir.

"Q. And Lee knew at that time that twenty feet did not belong to him? A. I don't know about that.

"Q. It wasn't covered by those two deeds, was it? A. I didn't see any other deeds at all. I was working for an individual then, and I was to survey any part that he should show me to survey and measure. I took the course of the west side of the street, then to Byar's bar, and it went north fifteen east.

"Q. Was Mr. Wright living in town at that time? A. Yes, sir.

"Q. Did he know about that survey being made? A. Yes, sir; he knew it."

He testified further that after that this road never ran on this twenty feet until after plaintiff's hotel burned down, and the city took possession and graded it down.

Thomas Mabrey testified that the state road at this point was sixty feet wide as he understood from Kittrell, who was one of the commissioners who marked and viewed it. It was recognized as a state road. Kittrell owned the land on both sides of it. He (Kittrell) recognized it as sixty feet wide. Kittrell had a hotel on lot 16 in the original town in 1859. "I boarded with him." He testified further as follows:

"Q. What, if any, conversation did you have with Mr. Lee relative to the reduction of this road to forty feet, or attempted reduction of this road to forty feet, or attempted reduction? A. We had a good deal of conversation about it. He was going to see the county court and reduce it as it run through town. He said he didn't care how it was out of town. He wanted to reduce the street so as to take possession of the land; I opposed it.

"Q. It never was reduced before the county court, was it? A. I don't know about·that; the records would show. He told me afterwards that the county court had reduced it, and he was kind enough to say that I might have ten feet of the twenty, and he take the other ten. I still opposed it and told him we ought not to cut it down. I told him I didn't believe the county had the right to do it, and if they had the right we ought not to do it; we ought to have the road sixty feet wide and I wouldn't take any part of it. He then employed Captain Naylor to do the surveying of the lots and called me to give me ten feet on my side and he take ten feet on his. It was recognized by everybody around here as being the state road from Doniphan to Pilot Knob. The road had just been cut out from Pilot Knob to this place.

"Q. Mr. Wright at that time was a resident of this place, wasn't he? A. I don't know just when Mr. Wright came here. I think at the time of laying off this lot he was.

"Q. You know that Mr. Wright was a resident then? A. I think that he was a resident at that time."

Lee platted the twenty feet in his addition and they drove the stakes on the sides of the forty-foot road and since then the road never run there. No official action was ever taken to prevent Lee or his vendees from occupying the twenty-foot strip.

The plat made and filed at that time is as follows:

"D. A LEE'S ADDITION TO THE TOWN OF DONIPHAN, MO.

· "Commencing 40 feet west of Thomas Mabrey's south-west corner, and 35 feet and 7 inches east of E. W. Wright's southeast corner, and being 2 feet east of the southeast corner of lot number 16, Old Town of Doniphan, Mo., and drove in the ground an iron rod ten inches long by three-quarters

Vol 169 mo—39

inch thick, being the southeast corner of D. A. Lee's addition; then run 20 feet east; then run a line where Byer's drawbars were; the bars being gone, but definitely located by N. C. Cockran and Linzie Dudley; then commencing 2 feet east, southeast corner of town lot 16, Old Town of Doniphan, and run north 15 degrees and 45 minutes east, 94 feet for lot 1; then run north same variation $37\frac{1}{2}$ feet for lot 2; then $37\frac{1}{2}$ feet for lot 3; then $37\frac{1}{2}$ feet for lot 4; then $37\frac{1}{2}$ feet for lot 5; then $37\frac{1}{2}$ feet for lot 6; then $37\frac{1}{2}$ feet for lot 7; then west 7 degrees south 153 feet and 4 inches; thence south to E. W. Wright's building; then east 2 feet; thence south to Washington street; thence east 7 degrees north to iron rod, the place of beginning, and being on the east side of the southwest quarter of the northwest quarter, section 26 in township 23, range 2 east.

"This 22nd day of February, 1883.

"D. A. LEE."

Plaintiff offered in evidence the general warranty deed of D. A. Lee and Mary E. Lee, his wife, to Edward W. Wright, filed for record March 6, 1883, conveying lot No. 1, D. A. Lee's addition to Doniphan, Missouri, and a warranty deed from Dan'l A. Lee and Mary E. Lee to Edward W. Wright, dated January 15, 1884, filed for record same day, conveying lot No. 2, block No. 1, D. A. Lee's addition to town of Doniphan.

It was shown that, in 1883, the plaintiff Wright built a hotel on a part of these lots at a cost of about $4,000; that this hotel occupied the strip now in suit. The hotel burned down in 1897, and thereupon the city graded down the street to the width of sixty feet, cutting down and removing a large amount of dirt, and thereupon plaintiff brought this suit.

The defendant offered in evidence an act of the Legislature, approved February 17, 1857, entitled "An Act to es-

tablish a state road from Doniphan, in Ripley county, to Pilot Knob, in Madison County." [Laws of Missouri 1856-57, page 843.] This Act designates commissioners "to view and mark out a state road from Doniphan to Pilot Knob." The width of the road is not fixed by the act, but the general statutes then in force (Revised Statutes of 1855, chapter 137, section 28) provided that "all state roads shall be marked out *sixty feet* wide." Defendant next read in evidence the report of the commissioners of their survey and view, which was ordered approved and filed, by the county court of Ripley county.

Defendant next read in evidence an act of the General Assembly, approved January 5, 1860 (Laws of Missouri 1859-60, p. 587). By this act the action of the commissioners was ratified and confirmed and the several county courts along the route were directed "to cause said road to be opened according to the location and survey thereof."

Upon this state of the evidence, no sort of doubt could exist that a public state road had been laid out and established from Pilot Knob to Doniphan and that it was sixty feet wide and that Daniel Lee knew not only of the existence of the road, but that it had been sixty feet wide and that by his survey and plat he assumed to appropriate twenty feet off the east side of said road and platted it in his addition. The offer of Lee to Mabrey to permit the latter to take ten feet and his statement that he would take ten feet and thus leave forty feet for the road, demonstrates that the road was sixty feet wide where it ran between his land and Mabrey's. As far as Lee was concerned, no stronger proof of the actual location of the road could be required. Mabrey's evidence corroborates Captain Naylor in every respect, and this evidence was entirely competent to show the location of the road, since the evidence of the county clerk disclosed that the reports of the commissioners named by the act of the Legislature had been burnt and destroyed.

Answering the first question, then, we think the learned circuit court could have had no hesitancy in finding that a public state road had been marked out and located from Pilot Knob to Doniphan, pursuant to an act of the Legislature, and that the work of the commissioners had been ratified by the Legislature and the county court. These facts all appear in the most authentic and solemn form. As the original report had been destroyed by fire, the next best evidence was the proof that this road had been opened, and the statement of Lemuel Kittrell, one of the commissioners who owned the land on both sides of said road, while in possession, that the road was sixty feet wide through his premises, and the record showing that the strip in controversy was a part of Kittrell's said tract, together with the uncontradicted evidence of Captain Naylor and Mr. Mabrey that the road was not only established and traveled, but was recognized by the public for many years as sixty feet wide at the very point where this strip was situated, would seem to leave nothing more to satisfy the court of the establishment of this road. It was not a road merely by user or prescription, but a public state road by act of and under the authority of the Legislature.

Nor do we think the court, from its declarations of law, hesitated to so find, but we must look elsewhere in the record to find the basis of the court's judgment for plaintiff.

The second question is even more easily answered. There was no evidence that the Legislature reduced the road to forty feet by any subsequent act. The general law of 1865 (General Statutes 1865, page 290, section 5) clearly had no such effect. By its terms it only refers to roads thereafter to be established by the county courts. Neither was there any competent evidence that the county court vacated this twenty feet of this state road. No record was produced to show such action by the county court.

Wright v. City of Doniphan.

The third query was answered by the court by its declaration of law as follows:

"2. The court further declares the law to be, that notwithstanding it may believe and find from the evidence in this case, that the land in controversy was, at the time plaintiff took possession and made the improvements of the same, a part of the land within the limits of what had formerly been the state road, yet if it finds and believes from the evidence that at the time plaintiff took possession and made the improvements, and that he did make the improvements by building a hotel, on said lands, he believed that he had title to said lands, and did not know that said lands were a part of any road or street, and that the defendant city has ever since it has been incorporated, assessed said lands to the plaintiff, and collected and received taxes from plaintiff on the same, and has not claimed said lands as being any part of the street, then it is estopped from now setting up or claiming title to said lands, and the finding should be for the plaintiff."

In other words, the learned circuit court applied the doctrine of equitable estoppel. That the action of the city authorities in assessing this strip for city taxes did not estop the public for whom the city was a trustee in its governmental capacity, we regard as too well settled in this State and elsewhere to require extended discussion.

In St. Louis v. Gorman, 29 Mo. 593, Judge Scott, with the concurrence of the whole court, ruled that the city was not estopped by the action of its officers in assessing the city's property to third persons, and such has been the general course of judicial opinion elsewhere.

Judge Elliott, in his work on Roads and Streets (2 Ed.), section 884, says: "It is difficult to conceive upon what principle an equitable estoppel can be securely placed in such cases, for the person who encroaches upon a public way *must know, as a matter of law,* that the way belongs to

the public, that the local authorities can neither directly nor indirectly alien the way, and that they can not divert it to a private use. As the person who uses the highway must possess this knowledge, and in legal contemplation does possess it, one of the chief elements of an estoppel is absent."

That Daniel Lee knew this was a highway sixty feet wide when he assumed to appropriate twenty feet of it to his own private use, is beyond all speculation. His offer to let Mabrey, the adjoining proprietor, take ten feet of this road, removes every doubt on this point. The plaintiff Wright was at that time a resident of Doniphan and owned one of the lots (16) immediately abutting on Lee's acre. He knew of Lee's appropriation, and of the existence of the highway, as the recitals in his chain of title disclosed, and, as Judge ELLIOTT says, he was bound as a matter of law to know that the highway was there and to know of its width.

As said by the Supreme Court of Alabama in Webb v. Demopolis, 95 Ala. loc. cit. 134, "Neither the statute of limitations, nor the rule which carries title to adverse possession, nor the doctrines of staleness, *equitable estoppel* or prescription, can be invoked or applied against the right of the city and of the public to have this street opened from end to end and from side to side." "The city never had any alienable title to or right in the street." Neither did the failure of the city authorities to prosecute plaintiff for nuisance for obstructing the highway constitute any estoppel.

Judge DILLON in his work on Municipal Corporations section 669, quotes with approval from an opinion of Mr. Justice SERGEANT, in Com. v. Alburger, 1 Wharton (Pa.) 487, as follows: "These principles, indeed, pervade the laws of the most enlightened nations as well as our own code, and are essential to the protection of public rights, which would be gradually frittered away, if the want of complaint or prosecution gave the party a right. Individuals may reasonably be held to a limited period to enforce their right

against adverse occupants, because they have sufficient interest to make them vigilant. But in public rights of property, each individual feels but a slight interest, and rather tolerates even a manifest encroachment, than seeks a dispute to set it right."

In view of these almost universal principles of law, the declaration of law given by the court as above set out must be held reversible error.

It is conceded by plaintiff's counsel that inasmuch as the illegal misappropriation by Lee of the strip in controversy began in 1883, long after the statutes of this State settled the law that the statute of limitations did not run against the State, that the city of Doniphan, which as to this highway represents the sovereignty of the State, is not barred by time or occupation of this strip by Lee or the plaintiff. [St. Louis v. Railroad, 114 Mo. 13; Williams v. St. Louis, 120 Mo. 403.]

It results that the judgment of the circuit court must be and it is hereby reversed.

All concur.