# THOMAS J. DEE, Appellant, v. JOSEPH NACHBAR.

### Division Two, December 10, 1907.

1. **EJECTMENT: Judgment on Pleadings.** Plaintiff is not entitled to judgment on the pleadings on the filing of an answer which in the same count admits plaintiff's possession within the past ten years but pleads estoppel. Nor if the answer, which in one count seems to admit plaintiff's possession within ten years, in others pleads a general denial and limitations.

2. ———: **Instruction: Principles Embodied in Another.** The refusal of an instruction asked by plaintiff in ejectment is not error, if the court, of its own motion, gives a correct instruction covering the theory embraced in the one asked by plaintiff.

3. ———: ———: **Description.** An instruction based on a description found in defendant's answer, which does not follow that description, but brings in land not in dispute, should be refused.

4. ———: ———: **No Evidence.** An instruction telling the jury that if they "believe from the evidence that defendant never intended to claim any part of the land north of the sewer box as the north side of his dwelling" he cannot set up title thereto by adverse possession, where there is no evidence as to where the "sewer box" was, should be refused, since there is no evidence on which to base it.

5. ———: **Estoppel: Statement to Defendant's Grantor.** Statements made by plaintiff to defendant's grantor as to where the stake and true boundary lines were, are just as binding on him as if made to defendant himself, and therefore such statements, though not made in defendant's presence, are admissible in evidence.

6. ———: ———: **Pointing out True Line: Changing Mind.** An instruction which tells the jury that unless they believe that the stake and line, claimed to have been pointed out by plaintiff, "has always since that time been taken and agreed between plaintiff and defendant to be the boundary line of plaintiff's property," etc., should be refused. Such an instruction would authorize the jury to find for plaintiff if he at any time thereafter changed his mind as to the true boundary line. The law is that, if the line contended for by defendant was pointed out by plaintiff to defendant or his grantor, as the true line, it is only necessary that defendant's use or possession of the strip in dispute continue long enough thereafter to indicate what was the understanding of the adjacent owners.

7. ———: Misleading Instruction: Designating Dividing Line: Evidence Omitted From Bill. Where appellant admits that the entire evidence is not preserved by the bill of exceptions, the Supreme Court will not undertake to pass upon a question entirely or practically controlled by evidence not before it. So that, where appellant complains that an instruction given for respondent was misleading in that it speaks of "the dividing line," "the line made by Koehler brothers," and "the true dividing line," thus placing, as appellant contends, three lines before the jury, in reply to which respondent insists that the designations refer to only one and the same line, as would clearly appear if all the evidence were before the Supreme Court, and appellant admits the bill of exceptions does not preserve the entire evidence, the court will not undertake to determine whether or not the instruction was misleading.

8. ———: Instruction: Assumption of Fact. An instruction which assumes as an established fact that the fence therein mentioned "extended from the east end of the property in question to about the rear of plaintiff's house," is not error, where the evidence in favor of the assumed fact was all one way and the fact was in no way controverted.

9. ———: Error in Admission and Rejection of Evidence: Harmless. Where the testimony offered on behalf of appellant and ruled out, and that admitted on behalf of respondent over appellant's objection, was not of such a character as to have changed the result or to authorize a reversal, even if the rulings of the court were wrong, it is unnecessary for the Supreme Court to determine whether or not those rulings were right or wrong.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans,* Judge.

AFFIRMED.

*William C. Forsee* for appellant.

The motion for judgment on the pleadings should have been sustained. Defendant could not, upon his answer, deny that he was in possession when we sued: (a) Because his plea of adverse possession admits the fact of possession. Tatum v. St. Louis, 125 Mo. 647. (b) Because unless the ground described in paragraph two of the answer was part of the land sued for, the plea would have no pertinency whatever to the case. Plaintiff's suit is for the south three and one-half feet

of lot 272; defendant pleads that he is and has been in possession of the land he describes for a period long enough to invest him with title. He does not say in terms that the land he describes is the "south three and one-half feet," etc., but unless it is the same land, he must be deemed to be setting up title to land not in controversy. (c) Because, further, as he admits in paragraph three that the land was the property of plaintiff in 1894, and as this suit was filed on March 20, 1903, it conclusively appears that he could not have been in adverse possession for the requisite period. His averment is that "the stake and line so pointed out by plaintiff [in 1894], as being the correct boundary line between said properties, has always been taken and agreed to be the south boundary line," etc. If it was agreed to be the line in 1894, then the adverse possession did not precede the date of the agreement, but could only follow that date. As defendant admits by the averments of paragraph three that plaintiff was in possession in 1894, and as he admits by the facts averred that he was in possession at date of suit, it follows that upon the face of the pleadings plaintiff was entitled to judgment, and his motion for judgment should have been sustained. The foregoing contention is not weakened by the fact that one of the defenses pleaded is a general denial. A general denial amounts to nothing as a denial of the fact of possession, when the same answer at once proceeds to confess such possession. Price v. Mining Co., 83 Mo. App. 470; Bank v. Stone, 93 Mo. App. 292; Darrett v. Donelly, 38 Mo. 494; McCord v. Railroad, 21 Mo. App. 95; Atteberry v. Powell, 29 Mo. 433; Cable v. McDaniel, 33 Mo. 363; Adams v. Trigg, 37 Mo. 143.

*Stubenrauch & Thurmond* for respondent.

Appellant's main contention is, that his motion for judgment on the pleadings should have been sustained.

His whole argument on this point is based on false premises. His first premise is that defendant, by the second paragraph of his answer, admits that defendant was in possession of the land sued for by plaintiff. To this plaintiff adds another false premise, to-wit: That because defendant pleads that in 1894 plaintiff pointed out this same line as the correct boundary line, therefore, defendant and his grantors could not have been in possession for a period of ten years prior to the bringing of the suit. He clearly overlooks the fact, which even his meagre record shows, that there was possession by defendant's grantors prior to 1894, because Vaughn testifies that he bought the property in question in January, 1894, and that there was an old fence on the line marked by the stake which Vaughn dug up and which Dee said was the correct line. A general denial, the plea of adverse possession, and the plea of estoppel, are three distinct defenses. Brummell v. Harris, 148 Mo. 440. But if the defenses were inconsistent, the remedy would be by motion to strike out, and not by motion for judgment on the pleadings after verdict.

BURGESS, J.—This suit grows out of a controversy over the boundary line between two building lots in Kansas City, the petition alleging that on the first day of March, 1903, plaintiff was, and still is, entitled to the possession of property described as the south three and one-half feet of lot No. 272, block 5, of the resurvey of Whipple's second addition to Kansas City, Missouri, and that on or about said day the defendant entered upon said premises and unlawfully withheld from plaintiff the possession thereof. Plaintiff prays judgment for the recovery of said premises, fifty dollars damages, and one dollar for monthly rents and profits from the rendition of judgment.

Defendant's amended answer to the petition states:

"FIRST. That he denies each and every allegation and averment in said petition made and contained.

"SECOND. For another and further answer to said petition, this defendant alleges that he and his grantors have been in the actual, continuous, undisputed, adverse possession, under claim of title, for more than ten years prior to the filing of the plaintiff's petition herein of the following-described property, to-wit: Beginning on the easterly line of Allen avenue, in Kansas City, Missouri, at a point 164.70 feet northeasterly from the intersection of the easterly line of Allen avenue, with the south line of the resurvey of Whipple's second addition; thence northeasterly along the easterly line of said Allen avenue, 54.90 feet, more or less, to a stake set by Koehler Brothers, said stake being on a line about five feet and six and one-half inches north of the house on lot 273 of block 5, of said resurvey of said Whipple's second addition, at the northwesterly corner of said house; thence east, or easterly and parallel with the south line of said resurvey of said Whipple's second addition, to a stake set by Koehler Brothers; thence continuing along said line to another stake set by Koehler Brothers; thence continuing easterly along said line to a point on the line running northeasterly and southwesterly through the center of said block 5 to the south line of lot 274, of block 5, of said resurvey of Whipple's second addition, thence westerly to the beginning. That he disclaims any title to, and denies that he is in possession of, any property north of the line herein described.

"THIRD. For another and further answer, to the petition of plaintiff, this defendant says, that the plaintiff, on or about the year 1894, pointed out to this defendant's grantor, N. B. Vaughn, a certain stake at or near the line of Allen avenue and on a line five feet

and six and one-half inches north of the northwest
corner of the house on said lot 273, as being on the
line between the property of the said plaintiff and
the said N. B. Vaughn; and that said stake and line
so pointed out by plaintiff, as being the correct boun-
dary line between said properties, has always been
taken and agreed to be the south boundary line of
plaintiff's property, and this defendant and his gran-
tors have made improvements upon this defendant's
property in accordance with and relying upon said
boundary line so pointed out by plaintiff. That said
boundary line so pointed out by plaintiff, is the north
line of the property, specifically described in paragraph
two hereof. Wherefore, defendant says that the plain-
tiff is estopped from claiming or asserting any other
line to be the boundary line between the property of
plaintiff and this defendant.

"Wherefore, having fully answered, this defendant
prays that plaintiff take nothing by his petition, and
that defendant have and recover of plaintiff his costs
in this behalf expended.

"Wherefore this defendant prays the court to ad-
judge that the plaintiff has no valid right in law or
equity to the property specifically described in the
second paragraph of his answer, and thereupon to enter
judgment that plaintiff, and all persons claiming by,
through, or under him be forever barred and estopped
from having or claiming any right or title adverse to
this defendant and those claiming by or through him
to any of the property described in the second para-
graph of this answer."

Plaintiff's replication was a denial of each and
every averment of the answer.

The cause was tried before the court and jury,
but before any evidence was offered plaintiff orally
moved the court for judgment on the pleadings, upon
the ground that the pleadings show upon their face

that plaintiff was entitled to a verdict for the recovery of the property, with nominal damages, and as part of said motion, plaintiff requested the court to give the following instruction:

"The court instructs the jury to find a verdict for plaintiff, in the following form: 'We, the jury, find for plaintiff, and do assess his damages at one cent.'"

The court overruled said motion and refused to give the instruction asked, and plaintiff duly excepted.

N. B. Vaughn, a witness for defendant, testified that he formerly owned the Nachbar house, purchasing it in January, 1894, and selling it in October, 1897, to Nachbar, and that he had had. occasion to talk to Mr. Dee about the dividing line between the two lots.

"Q. What was that occasion—state how it came about? A. There was a spring with a gutter we made, or water drain along the street at that time, as I had no well, and I spoke to him about this spring, and it was just about on the line, or a little over on his right division line, and so he said all right, I could fix it, so I went there to fixing it, and the stake was there which he said was the corner stake between the lots.

"Q. Who said that? A. Mr. Dee.

"Q. I asked you what was the occasion for your talk about the line and his telling you that. Now, you wanted to move this so this spring would come out up there by your house, as I understand it? A. Yes, sir. In digging, I followed the stream until I reached the rocks and got it over on my lot and some ten or twelve feet from where I started, before I got it as far towards the house, to get it out of the sidewalk. We didn't exactly make it on account of the rocks. In the course of the digging I dug up a stake. Mr. Dee was there with me at the time, and said that this stake was the corner of the lot. The stake was about six feet from where the line would run by the stone wall—from

the corner of the house projected out to Allen avenue. There used to be a fence or was a fence when I purchased this property, running from about the rear of this house down to Allen avenue. The fence in front was a post and one or two planks on it, and after it got back to the back end about even with Mr. Dee's kitchen, then it was a paling fence—the boards stood up straight, is my recollection. The front post of the fence I pulled up and used. Mr. Dee made a statement about that fence. I asked about the line after I purchased in reference to that fence. When I purchased, that fence was about six feet from Nachbar's house. I remember the drain that has been talked about here—it was inside, on Nachbar's side of the old fence, when I purchased. My recollection is very distinct as to about the distance the fence I spoke of was from the house. The fence was right by the stake—just south of it. The land was slanting, and the spring was down here, and the stake was at the edge of the lot line, and the fence there didn't commence until up here a few feet and it was right on a line with the stake. The stake I dug up was on an even line with the fence. My recollection is it was just inside the stake, on Nachbar's property—my property it was then. I remember a door in the wall when I purchased. I went up to it on the north side. The old fence ran down the hill on the rear of the lot then. It was on a line with the fence I testified about on the front part of the lot, and on a line with the stake I dug up. It was through there when I went there. With reference to the trough, the fence was about—it was from the house, probably a couple of feet—something like that—and then the trough was about a foot or eighteen inches wide, and then the fence was probably four feet or three and one-half feet from that. The fence was there, I purchased it from Homer Reed. I was there in the neighborhood, along about 1897, when I sold to Nach-

bar. I never heard of any landslide to the north that moved the fence to the north.''

On cross-examination, witness testified:

''I bought it in January, 1894, and sold it in 1897. I never lived there — I rented it out. I did not have a survey made when I went there. The old spring I spoke of was first discovered in front of the Dee lot, right on the line. The fence then in existence was six feet north of the Nachbar house. It didn't run right down to the front. It went down the hill. We fenced up to it right down to the spring. This old fence on the rear part of the lot at the time I left there, in 1897, or sold it in 1897, was kind of wabbly, but it was all there—the most of it. Between the time of my purchase and sale, in 1897, I went around there every month to collect the rent, and sometimes between times. No slide ever occurred on the back part of that lot, which moved this old fence over to the north, during the time I had any connection with it.''

Witness would not undertake to say that the fence running on the rear part of the lot was standing exactly in the same position as when he lived there, but his judgment was that it stood ''in exactly the same place, and the post holes in the same place, without any moving, until a year ago.'' Witness also testified that he removed the front fence in the fall of 1894.

Augustus McWilliams, testifying for the defendant, said that he used to live in the lower part of the Nachbar house, and remembered that there was then an old fence along the north side. The fence was about two feet south of Dee's house. He could not remember how far it was from Nachbar's. In a conversation had with Mr. Dee about buying the house, witness said he asked Mr. Dee where the line ran, and that the latter said ''this old fence is about on the line.'' Upon being asked when this occurred, witness said he thought it was about nine years ago.

John Siebold, a witness for defendant, testified that he remembered seeing the old fence in question, and heard Mr. Dee talk about it.

"Q. Where was the fence—the one you talk about? A. Well, I was standing on the old fence, and I worked for him on Sunday, and I shingled his house, and Tom Dee was standing on the old porch. I said I could push that fence over. He said that old fence is the line— that is what Mr. Dee said."

The plaintiff excepted to the action of the court in refusing to give the following instructions asked by him at the close of all the testimony:

"1a. If you find from the evidence in the case that plaintiff purchased lot 272 and obtained a deed thereto in 1886, and that in person and by tenants he used and occupied any part of said lot under claim of ownership of the whole thereof, under said deed, for ten years thereafter, and that during the whole of said ten years such claim and such use and occupation under said deed was open, notorious, continuous, exclusive and adverse to all others, your verdict must be for plaintiff for the strip of ground lying south of the fence, erected by defendant, running east from Allen avenue, and particularly described in paragraph two of defendant's amended answer.

"3. If you find from the evidence in the case that plaintiff purchased lot 272 and obtained a deed thereto in 1886, and that in person and by tenants he used and occupied any part of said lot, under claim of ownership of the whole thereof, under said deed, for ten years thereafter, and that during the whole of said ten years such claim and such use and occupation, under said deed, was open, notorious, continuous, exclusive and adverse to all others, you are instructed that he thereby obtained a good title thereto.

"6. The court instructs you that it is admitted by
207 Sup—44

the pleadings that at the date of the filing of this suit, defendant was in possession of the irregular strip of land, described in paragraph two of defendant's answer, and that said strip was and is in the south three and one-half feet of lot 272, sued for by plaintiff, and described as follows, to-wit: Beginning on the easterly line of Allen avenue, in Kansas City, Missouri, at a point 164.70 feet northeasterly from the intersection of the easterly line of Allen avenue with the south line of the re-survey of Whipple's second addition; thence northeasterly along the easterly line of said Allen avenue 54.90 feet, more or less, to a stake set by Koehler Brothers; said stake being on a line about five feet and six and one-half inches north of the house on lot 273 of block 5, of said re-survey of said Whipple's second addition, at the northwesterly corner of said house; thence east, or easterly, and parallel with the south line of said resurvey of said Whipple's second addition, to a stake set by Koehler Brothers, thence continuing along said line to another stake set by Koehler Brothers; thence, continuing easterly along said line to a point on the line, running northeasterly and southwesterly through the center of said block 5; thence southwesterly along the said center line of block 5, to the south line of lot 274, of block 5, of said re-survey of Whipple's second addition, thence westerly to the beginning.

"7. If you find and believe from the evidence in the case that defendant never intended to claim any part of the land north of the sewer box on the north side of his dwelling, unless he should ascertain or become convinced, by a survey thereof, or otherwise, that the north line of his lot was further north than said sewer box, then you are instructed that no matter where said true line may be, he cannot in this action set up title thereto by adverse possession, as said possession is defined and described in other instructions herewith given you.

"11. Although you may find and believe from the evidence in the case that plaintiff pointed out to one Vaughn the south line of his property, as being substantially the same line where defendant built the fence, yet unless you further so find and believe that said Vaughn relied upon said act, and thereafter continuously claimed right and title, up to the line and pointed out the same to defendant in plaintiff's presence, at the time defendant bought from Vaughn as being the south line, and unless both Vaughn and defendant continuously used, occupied and claimed the property up to that line, and made valuable and substantial improvements thereon, relying upon such act of plaintiff, plaintiff is not estopped to recover the land, south of said line and north of the sewer box, mentioned in evidence, if otherwise entitled to recover.

"12. Although you may find and believe from the evidence in the case that on or about the year 1894, plaintiff pointed out to defendant's grantor a certain stake at or near the line of Allen avenue and on a line five feet six and one-half inches north of the northwest corner of the house on said lot 273, as being on the line between the property of plaintiff and said grantor, yet, unless you further find from the evidence that said stake and line, so claimed to have been pointed out by plaintiff, has always since that time been taken and agreed between plaintiff and defendant and his grantor to be the south boundary line of plaintiff's property, and that defendant and his grantor have made improvements upon defendant's property, in accordance with, and relying upon said boundary line, you must disregard any and all evidence in regard to any alleged pointing out of said stake or line by plaintiff to said grantor as having no bearing upon the question as to where said boundary line should be located.

"14. If you find from the evidence in the case, under the instructions herewith given you, that plaintiff

is entitled to the possession of the whole of lot 272, and that when this suit was filed defendant was in possession of a part of said lot, you will in your verdict state where the south line between said two lots to which you may find plaintiff is entitled to possession is located, and your verdict will be in the following form: 'We, the jury, find for the plaintiff, and we further find that the line between lot 272 and defendant's lot, up to which plaintiff is entitled to recover possession, is a line parallel with the north foundation wall of defendant's house and located —— inches north of said wall.' ''

At the instance of defendant, the court gave the following instructions to the jury:

"1. The court instructs the jury that the burden is upon the plaintiff to prove his case by the greater weight of the credible testimony.

"2. The court instructs the jury that if they believe from the evidence that the division fence built by Nachbar and extending from near the west end of the property in question to about the rear of Nachbar's house, is on the dividing line of lots 272 and 273, in block 5, of the re-survey of Whipple's second addition, or that said division fence is south of the dividing line between said lots and if they believe from the evidence that the defendant has never placed any division fence north of the true dividing line, and that plaintiff has never had actual possession of any part of the land south of the fence built by the defendant along the line of the survey made by Koehler Brothers, as shown by the evidence, then your verdict must be for the defendant.

"3. The court instructs the jury that if they believe from the evidence that the defendant and his grantors have been for a period of ten consecutive years or more prior to March 20th, 1903, in the actual,

open, notorious, continuous, exclusive and adverse possession of that portion of the property in controversy, which lies south of the old division fence (which said fence extends from the east end of the property in question to about the rear of the plaintiff's house), and that portion of the property in question which lies south of that portion of the line located and staked out by Koehler Brothers, from Allen avenue to the west end of said old division fence, then your verdict must be for the defendant. .

"4. The court instructs the jury that if they believe from the evidence that any witness has wilfully sworn falsely to any material fact in the case, that the jury may disregard the whole or any part of such witness' testimony."

The court, of its own motion, gave to the jury the following instructions:

"3. If you find from the evidence in the case that plaintiff purchased lot 272 and obtained a deed thereto in 1886, and that in person and by tenants he used and occupied any part of said lot, under claim of ownership of the whole thereof, under said deed, for ten years thereafter, and before this suit was begun and that during the whole of said ten years such claim and such use. and occupation under said deed was open, notorious, continuous, exclusive and adverse to all others, you are instructed that he thereby obtained a good title thereto.

"11. Although you may find and believe from the evidence in the case, that plaintiff pointed out to one Vaughn the south line of his property as being substantially the same line where defendant built the fence, yet, unless you further so find and believe that said Vaughn relied upon said act, and thereafter continuously claimed right and title up to that line, and pointed out the same to defendant at the time defendant bought from Vaughn as being the south line, and, unless both Vaughn and defendant continuously used, occupied

and claimed the property up to that line, and made valuable and substantial improvements thereon, relying upon such act of plaintiff, plaintiff is not estopped by that act to recover any land, if any, south of said line, which you believe from the evidence he is otherwise entitled to recover.

"14. If you find from the evidence in the case, under the instructions herewith given you, for the plaintiff, and that plaintiff is entitled to the possession of the whole of lot 272, and that when this suit was filed defendant was in possession of a part of said lot, you will, in your verdict, state where the south line between said two lots to which you may find plaintiff is entitled to possession, is located and your verdict will be in the following form: 'We, the jury, find for the plaintiff, and we further find that the line between lot 272 and defendant's lot up to which plaintiff is entitled to recover possession, is a line parallel with the north foundation wall of defendant's house and located —— inches north of said wall.' "

To the giving of each and every of said instructions by the court, of its own motion, and for defendant, plaintiff at the time objected and excepted.

The jury returned a verdict in favor of defendant, and judgment was rendered accordingly.

Plaintiff duly filed a motion for judgment on the pleadings, notwithstanding the verdict of the jury, and also, on the same day, filed his motion for new trial, both of which motions were overruled by the court, plaintiff excepting. Plaintiff appeals from the judgment of the court.

The first contention of plaintiff is that his motion for judgment on the pleadings should have been sustained, because the defendant by the third paragraph of his answer admits that in 1894 the property north of the line described in paragraph two was plaintiff's property, or, in other words, that the defendant by the

second paragraph of his answer admits that the defendant was in possession of the land sued for, and that because the defendant pleads that in 1894 the plaintiff pointed out this same line as the correct boundary line, therefore, the defendant and his grantors could not have been in possession for a period of ten years next preceding the institution of this suit, on March 20, 1903, and plaintiff was entitled to judgment.

But the evidence shows that there was possession of the land prior to 1894. Vaughn, a witness for defendant, testified that when he bought the property in question from Homer Reed, in January, 1894, there was an old fence on the line marked by the stake which he, Vaughn, dug up, and which Dee said was the correct line. Besides, the answer pleaded three separate and distinct defenses, a general denial and two affirmative defenses, i. e., the Statute of Limitations and estoppel, and even though defendant failed on the plea of the Statute of Limitations, if he sustained the defense of estoppel, plaintiff could not recover. These defenses were not inconsistent, and even though they were, plaintiff's remedy was by motion to strike out or to require the defendant to elect upon which one he would stand, and not by motion for judgment on the pleadings.

It is claimed by plaintiff that instruction 1a should have been given. The argument is that, as defendant's answer admitted that the land described therein is the same land sued for and plaintiff had held adverse possession of it under color of title since 1886, he had thereby perfected right and title of possession in himself, and that as the second paragraph of defendant's answer admitted that he was in possession, no bar remained to plaintiff's recovery. This is in effect and substance the same argument that was made in support of the contention that plaintiff's motion for judgment on the pleadings should have been sustained, and for

the same reason given by us upon that matter, the instruction was properly refused. But in any event, instruction number 3, given by the court of its own motion, was all that plaintiff was entitled to upon this feature of the case. Nor was there error in the refusal of instruction 3, asked by plaintiff, because practically the same instruction, in almost the same language, was given by the court of its own motion, and it is no error to refuse an instruction asked for when the court gives a correct instruction of its own motion covering the theory of the one asked and refused. [Smith v. Eno, 15 Mo. App. 576.]

Plaintiff complains of the action of the court in refusing instruction number 6. It is apparent, we think, that this instruction, when read in connection with paragraph two of the defendant's answer, under which it was evidently drawn, was drawn under a misapprehension of the allegation. This instruction says that the irregular strip of land described in paragraph two of defendant's answer was and is the south three and one-half feet of lot 272, sued for by plaintiff, and then proceeds to describe it minutely, but not as described in said paragraph two of the answer, which is as lots 273 and 274, thus describing both of defendant's lots (one of which is not in question), and then gives an exact description of the property claimed by defendant. It fixes as the correct north boundary line of defendant's property the Koehler line. This description describes land 54.90 feet wide, while the instruction asked the court to tell the jury that it is the south three and one-half feet of lot 272.

Plaintiff further complains of the action of the court in refusing instruction number 7, asked by him, to the effect that if the jury "believe from the evidence that defendant never intended to claim any part of the land *north of the sewer box* as the north side of his dwelling," etc., he cannot in this action set up title

thereto by adverse possession. There is an entire absence from the abstract of any evidence upon which to predicate this instruction. The only evidence about the "sewer box" was that of Vaughn, where he speaks of a "trough," probably meaning the same thing.

Plaintiff next insists that instructions numbered 11 and 12, asked by him, were erroneously refused, and also insists that instruction 11, given by the court, should not have been given. The language of said instruction number 11, given by the court, differs from that asked by plaintiff in this, that it leaves out the words "in defendant's presence" and the words "and north of the sewer box," and incorporates therein the words "if any," after the word "land," as it appears in the next to the last line in the instruction.

In order that plaintiff's statement to Vaughn in regard to the stake and boundary line should be admissible against him in favor of the defendant, it was not necessary that it should have been made in defendant's presence, for as defendant holds under Vaughn, plaintiff's statements at the time, and his act in pointing out the stake and boundary line, are just as binding upon him by way of estoppel, in favor of defendant, as they would have been in favor of Vaughn, had he been the defendant.

Instruction number 12, asked by plaintiff, and refused by the court, is vicious, in that it tells the jury that unless they believe that said stake and line, so claimed to have been pointed out by plaintiff, *has always since that time been taken and agreed between plaintiff and defendant* and his grantor to be the south boundary line of plaintiff's property, etc. It needs but a glance at this instruction to discover its infirmity. If the line, as contended for by defendant, was pointed out by plaintiff to Vaughn as the true line, as testified by the latter, it was only necessary that the use or possession continue long enough to indicate what was the

understanding of the adjacent landowners (Brummell v. Harris, 148 Mo. 430) ; yet, under this instruction, had it been given, the jury would have been authorized to find for plaintiff if he had at any time thereafter, even up to the time of the submission of the case to the jury, changed his mind or have denied that the line pointed out by him to Vaughn was the true line. Such is not the law as we understand it.

Another insistence of the plaintiff is that instruction numbered 2 given for the defendant was calculated to mislead the jury, in that, it speaks of "the dividing line," "the line made by Koehler Brothers," and "the true dividing line," thus placing, as plaintiff contends, three lines before the jury. Upon the other hand, defendant insists that the three designations are as to one and the same line, as would clearly appear if all the evidence were before the court. It is admitted by plaintiff that the entire evidence is not preserved by the bill of exceptions; in the absence of which, this court will not undertake to pass upon a question controlled entirely, or at least practically so, by evidence not before us. To do so would be mere guess work, in which we are not permitted to indulge.

Plaintiff also criticises instruction number 3, given for defendant, upon the ground, as he contends, that "it states to the jury, as an established fact, that the fence therein mentioned extended from the east end of the property in question to about the rear of the plaintiff's house." The evidence disclosed by the record upon this question was all one way, and as the fact was in no way controverted, plaintiff's criticism of the instruction is without merit.

Other errors are assigned by plaintiff to the action of the court in admitting testimony in behalf of defendant over the objection of plaintiff, and in overruling motions by plaintiff to strike out certain testimony introduced by defendant; but this testimony was of such

a character that, whether the ruling of the court upon its admissibility were right or wrong, it would not justify a reversal of the judgment, nor could it have changed the result; hence, it seems unnecessary to pass on these questions.

The instructions given covered the entire case, which seems to have been well tried. Finding no reversible error in the record, the judgment is affirmed. All concur.