**Barbara VAN KAMPEN, Personal Representative of the Estate of Albert J. Wyma, Deceased, and Grace D. Stevens (formerly Grace D. Wyma), Plaintiffs-Appellants,**

v.

**Jesse W. KAUFFMAN, et al., Defendants,**

**Missouri Highway and Transportation Commission, Defendant-Respondent.**

**No. 13782.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 6, 1985.

Kerry D. Douglas, Douglas, Douglas, Lynch & Ashlock, P.C., Bolivar, and Don W. Owensby, Buffalo, for plaintiffs-appellants.

Bruce A. Ring, Paula Lambrecht, Jefferson City, for defendant-respondent.

CROW, Judge.

By warranty deed executed May 4, 1979, Jesse W. Kauffman and Rose Kauffman conveyed to Albert J. Wyma and Grace D. Wyma, husband and wife, for a price of $55,000, certain real estate in Hickory County on which, so the Wymas believed, the Pomme de Terre Motel, a one-building inn, was situated. The land lies south of Highway 54, just east of the Pomme de Terre River near Hermitage. The Wymas paid the Kauffmans $25,000 cash and executed a promissory note to the Kauffmans for the remaining $30,000, secured by a deed of trust on the real estate.

Fifteen months later, on August 4, 1980, the Wymas entered into a contract with Clifford E. Peterson and Dana R. Peterson to sell the property to the Petersons. Before that sale was closed, however, the Petersons learned that a sizable portion of the Motel encroaches on the right-of-way of Highway 54. Consequently, the Petersons refused to go through with the purchase.

The Wymas thereupon ceased making payments to the Kauffmans on the note, and soon thereafter the Wymas filed a four-count petition against the Kauffmans, Michael C. Freeman, trustee of the deed of trust securing the note, and the Missouri Highway and Transportation Commission ("the Commission"). Counts I, III and IV sought sundry relief against the Kauffmans and Freeman including (1) an injunction forbidding foreclosure of the deed of trust, (2) a decree rescinding the Wymas' purchase of the property from the Kauffmans, (3) a judgment in replevin regarding certain personalty allegedly removed from the Motel by the Kauffmans after the dispute arose, and (4) actual and punitive damages.

Count II sought relief against the Commission, alone, and was the only count in which relief was sought against the Commission. Count II prayed for judgment barring the Commission "from bringing any actions setting up or asserting any interest or rights in that part of the apparent right-of-way where the [Motel] is now located or from interferring [sic] with the free uses thereof and enjoining and prohibiting [the Commission] from interferring [sic] with the uses of said improvements."

The Commission filed a counterclaim against the Wymas, alleging that the Wymas were maintaining an obstruction on, and exercising domain over, the right-of-way of Highway 54. The counterclaim prayed that the Wymas be ordered to remove the obstruction and that they be enjoined from further maintaining it upon the right-of-way.

On December 1, 1982, the trial court, sitting without a jury, tried Count II of the petition together with the Commission's counterclaim, having severed them from the other issues for purpose of trial. By that time, the Wymas' marriage had been dissolved; the decree of dissolution awarded each an undivided one-half interest in the property. Grace, by virtue of a new marriage, had become Grace D. Stevens.

The evidence showed that Highway 54, at the Motel site, is a two-lane paved high-

way. The one-story Motel is curved like a boomerang because of a bluff extending sharply upward immediately behind it. A survey by Ronald A. Lynch, a registered land surveyor, revealed that the part of the Motel nearest the pavement is 46.5 feet from the center line, which, according to our calculations, leaves approximately 35 feet of unpaved berm between the south edge of the pavement and the nearest part of the Motel. The right-of-way extends 85 feet outward from the center of the pavement. Consequently, at the point of greatest encroachment, the Motel intrudes the right-of-way approximately 38.5 feet. About half the Motel lies on the right-of-way.

The trial court entered judgment January 7, 1983, finding the issues in favor of the Commission on Count II of the petition and also in favor of the Commission on its counterclaim. Albert J. Wyma and Grace D. Stevens were "enjoined from maintaining a motel or any other building upon the right-of-way of Route 54 in Hickory County," and were further ordered to remove, within a reasonable time, "any such portion of the motel located upon the right-of-way." The judgment was designated final for purpose of appeal. Rule 81.06, Missouri Rules of Civil Procedure (14th ed. 1983).

Albert and Grace appealed, but their appeal was dismissed because it could not be ascertained from the judgment exactly what part of the Motel encroached on the right-of-way. As a consequence, there was no way to identify the portion of the Motel that the trial court had ordered removed. *Wyma v. Kauffman,* 665 S.W.2d 82 (Mo. App.1984).

Thereafter, under date of April 25, 1984, the trial court filed new findings of fact, conclusions of law, and judgment on Count II of the petition and the Commission's counterclaim. By then, Albert J. Wyma had died, and the personal representative of his estate, Barbara Van Kampen, had been substituted for him in this action. The new judgment was to the same effect as the earlier one except that it incorporated the plat of the Lynch survey, thereby enabling the parties to identify with precision the part of the Motel encroaching on the right-of-way.

Ms. Van Kampen, in her representative capacity, and Grace D. Stevens appeal from that judgment. They are herein referred to collectively as "appellants." In discussing events that occurred prior to the death of Albert J. Wyma, we refer to him and Grace D. Stevens collectively as "the Wymas." The land the Wymas purchased from the Kauffmans in 1979 is designated "the deeded tract."

The right-of-way for Highway 54, where it abuts the deeded tract, was acquired by the Commission in a condemnation suit filed in 1937 in the Circuit Court of Hickory County.

In 1954 the deeded tract was owned by Lloyd D. "Doc" Weaver and his wife, Wilma. At that time, the Motel had not yet been built, but the Weavers had plans to build it. Highway 54, at the site in issue, was situated in 1954 exactly as it is now.

How the Motel came to be built where it sits is revealed in the following findings of fact by the trial court:

"18. Said land [the deeded tract] consisted mostly of bluff, which was required to be bulldozed in order to have adequate room for the construction of the motel.

19. Lloyd Weaver contacted Howard Lackey, maintenance foreman for the Commission, and requested assistance in obtaining a driveway permit and attempting to determine the location of the right-of-way line.

. . . . .

21. According to Lloyd Weaver, Howard Lackey came to the motel site, measured 60 feet from Route 54's centerline as the right-of-way line and staked that line.

22. According to Lloyd Weaver, the line staked by Howard Lackey was approximately a foot or so different from where Weaver had believed the line to be.

23. Lloyd Weaver stated he built the motel south of the stakes designating the right-of-way line."

Count II of the Wymas' petition alleged that the Weavers—the Wymas' predecessors in title [1]—relied on Lackey's representation as to the right-of-way line in deciding where to build the Motel, and that when the Wymas bought the deeded tract in 1979 they were unaware of the encroachment. Therefore, pleaded the Wymas, the Commission should be estopped from asserting that the right-of-way line is anyplace other than where Lackey staked it in 1954.

The trial court rejected that theory, ruling that the Wymas failed to prove one element of equitable estoppel, i.e., they failed to prove the Weavers relied in good faith on Lackey's representation as to the location of the right-of-way. The trial court stated that a party relying on an estoppel must lack knowledge and also lack the means to ascertain the truth as to the facts and must exercise reasonable diligence to acquire knowledge of the real facts. The trial court noted that at the time the Motel was built, the petition in the right-of-way condemnation suit was on record in the office of the Circuit Clerk of Hickory County and a set of highway plans showing the right-of-way for Highway 54 was on file in the office of the County Clerk of Hickory County. The trial court evidently concluded from this that the Weavers had constructive notice of the location of the right-of-way or the means to determine its location and were therefore not entitled to rely on the line staked by Lackey.

Having based its decision on that analysis, the trial court did not reach the issue whether, had the Weavers been entitled to rely on Lackey's representation, the Commission would be estopped to assert the true location of the right-of-way. The trial court's finding that proof of one element of estoppel was lacking made it unnecessary to decide whether estoppel could lie against the Commission in the circumstances here.

Appellants, in a scholarly and comprehensive brief, assert, as assignment of error number 5, that the trial court erred in ruling that the Wymas failed to prove the "good faith reliance" element of equitable estoppel. In support of that contention, appellants point to the following evidence.

"Doc" Weaver testified that when he and his wife bought the deeded tract early in 1954, the bluff "come pretty near out to the highway," and he realized he would have to "blow the bluff off" a sufficient distance back from the right-of-way to erect the Motel.

In order to determine how much of the bluff to remove, Weaver "had Mr. Lackey down there, and he showed us where the state property went to, and we figured how wide the motel would be, and we just blowed it off until we could build enough back." Asked how Lackey determined the location of the right-of-way line, Weaver testified, "[H]e come out and measured—staked it off."

Weaver's testimony continued:

"Q. ... He put stakes up?

A. He put a couple of stakes right in there.

Q. Okay. And that's what you relied upon for building—

A. That's what we went by."

On cross-examination:

"Q. ... Now you said [Lackey] measured it; what did he use to measure it with?

A. He just used a metal steel tape.

Q. Okay. Did you ever see any surveying equipment out there?

A. No. They never used none there at that time.

. . . . .

Q. And Mr. Lackey was the only employee of the Highway Department you're saying who made any representations to you regarding this right-of-way; isn't that right?

---

1. According to the Wymas' abstract, after the Weavers built the Motel the deeded tract changed ownership four times before the Wymas bought it.

A. That's right. Howard was the only one.

.    .    .    .    .

Q. ... Did you call Mr. Lackey initially, or did he contact you?

A. When the—on—

Q. The first contact about this motel property?

A. Oh, no, we called him.

Q. You called him and asked him to come out?

A. Yeah.

Q. Okay. Is that correct?

A. Oh, we definitely had to call him then.

Q. Okay. And you stated to your recollection he had told you there was a 60-foot right of way?

A. I'm sure. Some of them said it was 50, but I think he said 60 because I was there when he measured it off.

Q. Okay. And you're saying he measured from the center line?

A. The center line up there where I told you he measured it to.

Q. Okay.

A. He measured it two places there."

As the trial court noted, Lackey's position with the Commission in 1954 was "maintenance foreman." Regarding Lackey's duties and authority, the trial court found:

"20. No job specifications exist for a Maintenance Foreman as that position existed in 1954, but the job is most similar to the present job title of Maintenance Area Supervisor. Based upon the job specifications for such a Maintenance Area Supervisor and the similarity between the two positions, the Court finds that a Maintenance Foreman was authorized by the highway Commission to inspect permit work in progress, resolve problems involving the highway, explain policies of the Highway Commission to the public, and investigate right-of-way encroachments."

Personnel records of the Commission show that Lackey was neither an engineer nor a surveyor.

In addition to "Doc" Weaver, two other witnesses testified about Lackey's marking of the right-of-way line.

Ralph Troxel, who in 1954 did "dozer work," was hired by Weaver to "level off the place back of the right-of-way, to build a motel." Asked how he knew how much of the bluff to "bulldoze," Troxel explained, "We had Lackey or the engineer, whatever, come out there and measure it off, put flags there." Troxel added, "He went out the center line of the road and measured back in two different spots." Asked how the measuring was done, Troxel replied, "Tape, I remember."

Ozzie Bernell McVay, hired by Weaver to aid in construction of the Motel, assisted in drawing the plans and "did most of the plumbing" and "some of the other work." McVay recalled that before construction commenced, three, four or five men in "highway trucks" came to the site and "set up their instruments and measured the—and set stakes or the boundary markers on it." McVay, who was acquainted with Lackey, testified that Lackey was not the person who placed the stakes. McVay corroborated Weaver and Troxel about having to remove part of the bluff to make room for the Motel. McVay testified the Motel was built south and east of the stakes.

According to "Doc" Weaver, construction of the Motel began in April or May, 1954. In an application dated June 10, 1954, Weaver requested permission from the Commission to construct a driveway on the shoulder from the south edge of Highway 54 to the Motel. The application was accompanied by a $50 deposit. The Commission issued the permit June 15, 1954. Weaver testified that after the driveway was constructed and inspected, the Commission returned his $50 deposit.

The Commission's district engineer testified that any owner of property abutting highway right-of-way who desires to construct a driveway across the right-of-way from the edge of a highway to his property line is required to go through this procedure. The property owner's deposit is re-

funded if he constructs the driveway in accordance with the permit.

Emphasizing that nothing regarding the 1937 condemnation suit was filed in the office of the Recorder of Deeds of Hickory County, appellants argue that the evidence establishes as a matter of law that the Weavers acted reasonably and in good faith in relying on Lackey's representation as to the location of the right-of-way line and that the Weavers were justified in so relying. Appellants assert that the trial court erred in ruling to the contrary. Implicit in appellants' hypothesis is the assumption that if the Commission, on this evidence, would have been estopped to assert the true location of the right-of-way against the Weavers, the Commission should likewise be estopped to assert it against appellants, as they are successors in interest to the Weavers.

■ "Equitable estoppel" [2] or "estoppel in pais" is that condition in which justice forbids that one speak the truth in his own behalf. *Peerless Supply Co. v. Industrial Plumbing & Heating Co.*, 460 S.W.2d 651, 665[13] (Mo.1970). It stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another. *Id.* at 665[14]. To constitute estoppel in pais, three things must occur: first, an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act. *Id.* at 665–66[15].

■ The party asserting an estoppel bears the burden of proving it. *Medical West Building Corp. v. E.L. Zoernig & Co.*, 414 S.W.2d 287, 293–94[5] (Mo.1967);

*Emery v. Brown Shoe Co.*, 287 S.W.2d 761, 767[4] (Mo.1956). Every fact essential to create it must be established by clear and satisfactory evidence. *Peerless Supply Co.*, 460 S.W.2d at 666[17]; *Kind*, 409 S.W.2d at 257[2].

■ One cannot set up another's act or conduct as the ground of an estoppel unless the one claiming it be misled or deceived by such act or conduct, nor can he set it up where he knew or had the same means of knowledge as the other as to the truth. *Land Clearance for Redevelopment Authority of Kansas City v. Dunn*, 416 S.W.2d 948, 951[1] (Mo.1967); *Lytle v. Page*, 591 S.W.2d 421, 424[3] (Mo.App. 1979).

■ Applying these principles to the evidence heretofore discussed, we observe that the trial court was evidently persuaded that no survey was made by employees of the Commission in 1954 when "Doc" Weaver asked Lackey to locate the right-of-way line. Although McVay testified that Commission personnel "set up the tripods out in the center of the road," the trial court obviously found Weaver's and Troxel's testimony that Lackey merely measured from the center of Highway 54 with a tape more persuasive. This conflict in the testimony was for the trial court to resolve, *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483[3] (Mo. banc 1980), the trial court having leave to believe all, part or none of the testimony of any witness. *Id.* at 483[4].

Appellants' point 5 thus distills to whether the trial court erred in holding that the Weavers were not entitled to assume that the right-of-way line lay where Lackey's measurements indicated.

In considering the question, we are mindful that the description of the deeded tract in the conveyances whereby the Weavers

---

**2.** *Kind v. Staton*, 409 S.W.2d 253, 257[3] (Mo. App.1966), explains there are four methods by which estoppel may arise. Three (estoppel by

record, by deed, and by contract) are not present here. Only the fourth, "equitable estop-

acquired it[3] begins on the south right-of-way line of Highway 54. The Weavers therefore had reason to know (and "Doc" obviously did) that the location of the right-of-way line was essential to identify where their land lay.

It is also noteworthy that "Doc," by his own admission, "didn't figure" Lackey was an engineer or a surveyor.

Added to this is the fact that the Weavers had the means at hand to ascertain the location of their boundaries. Prior to trial, surveyor Lynch, using the description of the deeded tract and a set of the plans for Highway 54, located the right-of-way line at the Motel site, and his survey was accepted as correct by the trial court.

We realize, of course, that it is unrealistic to say the Weavers should have searched the Hickory County Courthouse in 1954 to locate the record of the 1937 right-of-way condemnation suit or the Highway 54 plans. Even had the Weavers found them, there is no showing that the Weavers themselves had the expertise to determine therefrom where the right-of-way line lay.

It is clear, however, that before they built the Motel, the Weavers, by the simple expedient of a survey utilizing data readily obtainable by a surveyor, could have made certain where their northern boundary lay and thereby have avoided the encroachment.

■ We do not quarrel with appellants' contention that "Doc" Weaver, in asking Lackey to locate the right-of-way line, did what many, if not most, people would have done. That, however, does not supply the basis for an equitable estoppel. It is essential that the party claiming the estoppel lack knowledge and lack the means of knowledge of the truth as to the facts in question. *Board of Education of City of St. Louis v. St. Louis County,* 347 Mo. 1014, 149 S.W.2d 878, 880[2] (1941).

■ We therefore hold that the trial court did not err in ruling that the Wymas failed to prove that the Weavers' reliance on Lackey's marking of the right-of-way line was justified.

In so holding, we do not overlook appellants' argument that the Commission had a superior means of knowledge as to the location of the right-of-way. That may be true insofar as the Commission would have found it easier than the Weavers to locate the records of the 1937 condemnation suit and the plans for Highway 54. From those sources, however, there is no reason why a surveyor for the Weavers could not have determined the right-of-way line as easily and accurately as a surveyor for the Commission. Indeed, at trial the Commission presented a plat of a survey by a surveyor employed by it, but the trial court adopted the Lynch survey (made at the behest of the Wymas) in its judgment. We consequently find appellants' argument unpersuasive.

■ We have likewise not ignored the evidence regarding the driveway permit. We fail to see how that bears on the issue of the Weavers' right to rely. The permit was issued weeks after construction commenced, so it obviously was no factor in the Weavers' decision as to where to locate the Motel. According to "Doc" Weaver, construction of the driveway began only about six weeks before the Motel was finished.

We therefore reject the assignment of error in appellants' point 5.

Though our denial of point 5 is not based on the ground that the Weavers were bound as a matter of law to know the location of the right-of-way, the Supreme Court of Missouri has so indicated in a case involving a city street. *Wright v. City of Doniphan,* 169 Mo. 601, 70 S.W. 146, 149 (1902). That rule, if applied here, would, of course, defeat estoppel.

Having upheld the trial court's determination that the evidence failed to establish

---

pel," which arises by misrepresentation, is of possible application.

**3.** According to the abstract, the Weavers acquired the deeded tract in two segments, from different grantors.

an estoppel in favor of the Weavers against the Commission, we do not reach the issue whether appellants, as successors in interest to the Weavers, could claim the benefit of such an estoppel. *See,* however, *Dee v. Nachbar,* 207 Mo. 680, 106 S.W. 35, 40 (1907).

What we have thus far said disposes of appellants' remaining points, five in all. Those points variously assert that the trial court erred in failing to make a finding that Lackey was generally recognized as the "person to call" in 1954 when a citizen in Hickory County had a problem relating to highways, that the action of the Commission's district engineer in approving the Weavers' application for the driveway permit was an "implied representation" of the location of the right-of-way line and constituted a ratification of Lackey's markings, that the trial court wrongly concluded that no agent or employee of the Commission is authorized to erroneously represent the State's ownership of land and bind the State thereto, that the trial court erred in finding that the Commission has tentative plans to utilize the right-of-way where the Motel sits in replacing the bridge west of the Motel, and that the trial court erred in failing to apply the doctrine of equitable estoppel against the Commission when all elements thereof had been established.

None of these contentions affect our decision upholding the trial court's ruling that the Wymas failed to prove that the Weavers were entitled to rely on Lackey's representation regarding the right-of-way line, an essential element of equitable estoppel. Appellants do not contend that Lackey was authorized to relocate the right-of-way or give away the Commission's land. Moreover, appellants, with commendable candor, concede in their brief that rejection of their point 5 virtually compels affirmance of the judgment.

For these reasons, it is unnecessary for us to extend this opinion by further reference to the remaining points. They are denied and the judgment is affirmed.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.