Norman JONES, Plaintiff,

and

Roy A. Phillips, et al.,
Intervenors-Appellants,

v.

Bill COX, et al., Defendants-Respondents.

No. 11914.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 24, 1981.

Motion for Rehearing or to Transfer to
Supreme Court Denied
Dec. 11, 1981.

Application to Transfer Denied
Jan. 18, 1982.

**512**

William J. Fleischaker, Roberts & Fleischaker, Joplin, for intervenors-appellants.

J. Kevin Checkett and James R. Spradling, Esterly, Spradling & Checkett, Carthage, for defendants-respondents.

BILLINGS, Judge.

Suit by collateral kinsmen to set aside transfers of property by Ray and Alma Phillips, husband and wife, both deceased, or to impose a constructive trust on the properties, because of the alleged undue influence by the transferee of the properties, Bill Cox, and his wife Doris.[1] The trial court found there was no undue influence and entered judgment that Bill Cox was the owner of the properties. We affirm.

Ray Phillips, described as a man of strong will and not easily influenced, and Bill Cox had been friends since 1956 and their relationship was much like "father and son". In 1973, Ray was hospitalized for cancer and, thereafter, Bill Cox was in daily contact with Ray and assisted Ray and Alma in various ways. In 1976 Ray became aware he was terminally ill with cancer and was concerned about the care of his partially blind wife, Alma, in the event of his death. On October 4, 1976, Ray and Alma executed various documents which named Bill Cox as a joint tenant, with right of survivorship, in an automobile, certificates of deposit, and certain real estate. The documents were prepared by Doris Cox at the direction of Ray Phillips and were notarized by a long time businessman friend of Ray.[2] The Phillipses died the following month.

■ We have read the trial transcripts, viewed the parties' exhibits, and reviewed the trial court's memorandum of findings and conclusions. The trial court's determination of the issue of undue influence is not against the weight of the evidence and is supported by substantial evidence. No error of law appears and an extended opinion would be of no precedential value. Accordingly, we affirm the trial court as to its resolution of this issue pursuant to Rule 84.16(b), V.A.M.R.; *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

---

1. Doris Cox was also named as a defendant because of her possible marital interest in the properties. Ray Phillips died November 26, 1976, and his wife died the following day, November 27, 1976. Plaintiff and intervening parties were either beneficiaries under the Wills of Ray and Alma, or, prior to October 4, 1976, had been shown as joint tenants with Ray and Alma on certificates of deposit.

2. Doris Cox had been executive secretary to the president of a bank for several years. At Ray Phillips' request and direction she had also prepared the 1973 Wills of Ray and Alma, and a 1973 and 1976 power of attorney to Bill Cox.

Appellants further contended in the trial court, as they do here, that the deed conveying the real estate was fatally flawed with ambiguities and failed to create a joint tenancy with right of survivorship. Appellants do not suggest what interest the deed conveyed, but say it did not create a joint tenancy with Cox because the Phillipses reserved the right of possession and right of ownership.

The standard printed form warranty deed, prepared by Doris Cox, describes Mr. and Mrs. Phillips as the parties of the first part and "Ray S. Phillips and Alma Phillips, husband and wife, and Bill R. Cox, as joint tenants with rights of survivorship and not as tenants in common", as parties of the second part. Consideration is recited as "one dollar and other valuable considerations". The granting clause says nothing about a joint tenancy to the three named grantees but contains the usual form words of grant "unto the said parties of the second part their heirs and assigns . . . ." Following the legal description of the property are the reservations referred to by the appellants, to-wit:

"The parties of the first part are to receive all monies from rent on this property and pay all maintenance expense. Further, the parties of the first part reserve the right of possession and occupancy of this property until at such time the parties of the first part are deemed incapacitated to care for themselves. Further, the parties of the first part reserve the right of ownership."

First of all, we note that the nature of the estate intended to be passed may be gleaned from any part of the deed, including the introductory clauses, especially where not part of the printed form. *Keller v. Keller*, 343 Mo. 815, 123 S.W.2d 113 (1938). Second, § 442.450, RSMo 1978, provides that generally a grant or devise of real estate to two or more persons creates a tenancy in common unless expressly declared to be a joint tenancy, and § 442.025, RSMo 1978, permits a direct conveyance by persons, including married couples, to themselves and another in order to create a joint tenancy or other form of concurrent ownership. Furthermore, the use of words of inheritance, although not required by § 442.460, RSMo 1978, strengthens the reading of a deed to pass a fee simple title and not some amalgam of lesser estates.[3] Here, the habendum and warranties clauses of the deed also contain the historical and customary words of inheritance, i.e., "unto the said parties of the second part and unto their heirs and assigns . . . ."

Leaving aside the reservations for the moment, a conveyance to "A and B, husband and wife, and C, as joint tenants and not as tenants in common" results in the married couple holding one share as tenants by the entirety, but as a single joint tenant with respect to C who holds an equivalent interest. *Nelson v. Hotchkiss*, 601 S.W.2d 14 (Mo.banc 1980). Thus, following *Nelson*, the instant deed created a tenancy by the entirety in Mr. and Mrs. Phillips as to one share of the joint tenancy with Cox being vested with the remaining joint tenancy share.

The question remains as to the effect of the reservations which followed the description. We note that people are presumed not to intend nullities by their solemn conveyances and if one construction will render a deed operative and a competing construction will render it wholly inoperative, the former is preferred if not unreasonable nor legally impossible. *Hobbs v. Yeager*, 263 S.W.2d 225 (Mo.1924). Validity is favored over invalidity. *Beauchamp v. Beauchamp*, 381 S.W.2d 804 (Mo.1964). Further, it has been said that if a clause written in after the description hopelessly conflicts with a clause located in a position usually employed to define and grant estates, the repugnancy may be ignored. *Petty v. Griffith*, 165 S.W.2d 412 (Mo.1942).

3. *See: Powers v. Buckowitz*, 347 S.W.2d 174 (Mo.banc 1961); *McClendon v. Johnson*, 337 S.W.2d 77 (Mo.1960). These cases use the principle noted to limit the holding of *Hunter v. Hunter*, 320 S.W.2d 529 (Mo.1959), a case also criticized by Eckhardt, *Property Law in Missouri*, 24 Mo.L.Rev. 456 (1959).

*See also Holland v. Holland,* 509 S.W.2d 91 (Mo.1974). To effectuate the nullification flies in the face of "the contrary evidence of intention . . . to be found in the form of the instrument and its having been recorded." *Julius v. Buckner,* 452 S.W.2d 139 (Mo.1970). And, where a deed was "drawn by one not schooled in the science of conveyancing," an estate clearly granted was held not to be cut down by a later repugnant, but somewhat unclear provision. *Triplett v. Triplett,* 332 Mo. 870, 60 S.W.2d 13 (1933).

■ In addition to the foregoing declarations of law, there is another which likewise supports the ruling of the trial court that the deed was valid and Bill Cox became the absolute owner of the property upon the deaths of Mr. and Mrs. Phillips. As stated earlier, the deed passed a present interest in fee by joint tenancy to Cox. The fact that possession by Cox was delayed, together with the usual incidents of ownership (rents, maintenance, taxes, etc.,) would not nullify the estate created. *McClendon v. Johnson,* 337 S.W.2d 77 (Mo.1960).[4]

There is respectable authority from other jurisdictions to the effect that joint tenancy is not destroyed by arrangements among the joint tenants which exclude one or more from management, possession, income and use rights for a specified period or for the life of another one or more of the joint tenants. Annot., 64 A.L.R.2d 918, 947 (1959). In *Tindall v. Yeats,* 392 Ill. 502, 64 N.E.2d 903 (1946), a leading case, a married couple conveyed to the wife and a third person as joint tenants. By a separate but contemporaneous agreement, the two grantees agreed that the wife would have all the rentals and possessory rights during her lifetime, along with the duty to maintain and insure the premises as if she were

" 'the sole and exclusive owner thereof' ". The court held joint tenants may agree concerning exclusive use and possession without severing a joint tenancy so long as "not in conflict with rules of law, good morals or public policy." *Tindall* was cited with approval in *Miller v. Riegler,* 243 Ark. 251, 419 S.W.2d 599 (1967), where the issue was whether a purported joint tenancy of personalty (stock) was really a matter of convenience for the management of the property of the original owner who in fact exercised ownership rights. The Arkansas court said:

"And why should this not be permissible? Why should owners of property, real or personal, be prohibited from doing as they desire with that property, so long as the disposition is not for an immoral purpose, or against public policy?"

■ In our view, the questioned deed expressly created a joint tenancy, with lawful reservations, much as in the nature of a contract, of certain benefits and burdens of ownership, at least so long as the grantors could competently deal with the property. The inartful reservation of the "right of ownership" by the lay scrivener of the deed should be read either as nugatory or as a summary of the grantors' intent to reserve the usual benefits and burdens of ownership as set out in the more express portion of the reservation.

The judgment is affirmed.

PREWITT, P. J., and HOGAN, J., concur.

MAUS, C. J., not participating.

4. A somewhat similar situation arises in the class of cases where the issue was whether a particular instrument effectively passed an interest *in praesenti* or whether it failed as an ineffective testamentary disposition. *See, e.g., St. Louis County Nat'l Bank v. Fielder,* 364 Mo. 207, 260 S.W.2d 483 (banc 1953); *Julius v. Buckner,* 452 S.W.2d 139 (Mo.1970); Comment, *Testamentary Character of Deeds in Missouri,* 5 Mo. L.Rev. 350 (1940). Reservation of the right to sell the property and destroy the future posses-

sion was held not to make the deed testamentary in *St. Louis Nat'l Bank v. Fielder,* supra. Mr. and Mrs. Cox both testified that Bill Cox was not intended to have any control of the property until after the grantors' deaths and "when they passed away, it would go to Bill." The deed itself speaks of incapacity. A delay in possessory vesting until some future event (such as incapacity) is recognized by Missouri law. § 442.510, RSMo 1978.