**Mitchell and Catherine REBEN,
Respondents,**

v.

**Charles S. WILSON, et al., Appellants.**

**Charles S. WILSON, et al., Appellants,**

v.

**Mitchel and Catherine REBEN,
Respondents.**

Nos. 62103, 62508.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 24, 1993.

Rehearing Denied Sept. 29, 1993.

James E. Wynne and Walter H. Sheata, St. Louis, for respondents.

Elbert Dorsey, St. Louis and Jack B. Spooner, Clayton, for appellants.

SIMON, Judge.

This is an appeal from various orders entered in the Circuit Court of the City of St. Louis in an ejectment action by respondents, Mitchel and Catherine Reben, wherein they were awarded possession of the premises and real property known as 4746 West Florissant, St. Louis, Missouri (hereinafter referred to as the property at issue) and $500 per month rent for all months occupied after the ejectment action was filed. A counterclaim to respondents' previously dismissed quiet title action was consolidated with the ejectment action and was dismissed.

National Funeral Home Services, Inc. (NFHS), National Prearranged Services (NPS), and B.B. Anderson, Inc. d/b/a A.L. Beal Mortuary (B.B. Anderson), (collectively Appellants), appeal the judgment awarding respondents possession and the dismissal of their second amended counterclaim and the denial of their motion to dismiss, or in the alternative, motion for summary judgment. Charles S. Wilson, Jr. (Wilson), who was not a party to the counterclaim, also appeals.

On appeal, Appellants contend the trial court erred in: 1) holding that respondents shall have and recover possession of the premises and real property at issue; 2) finding the Appellants did not have standing to bring the second amended counterclaim, thereby sustaining respondents' motion to dismiss the second amended counterclaim; and 3) denying Appellants' motion to dismiss, or in the alternative, motion for summary judgment.

In his points on appeal, Wilson contends as follows:

"1. Whether the trial court erred in dismissing the second amended counter claim?"

"2. Whether the trial court erred in making a finding that B.B. Anderson Corp. was administratively dissolved by the Missouri Secretary of State on June 24, 1991 and, therefore, had no standing to file the second amended counter claim."

■ Initially, we admonish counsel for the inadequacy of their briefs. However, Wilson's brief deserves special scrutiny. Our Supreme Court has held that it is not the function of this court to serve as advocate for any party to an appeal and that when counsel files non-conforming or otherwise inadequate briefs, this court need not supply additional research and briefing to supplement the deficiency. *Thummel v. King*, 570 S.W.2d 679, 686–687 (Mo. banc, 1978). Based on his brief, this is precisely what Wilson asks this court to do.

■ Wilson's points on appeal do not conform with Rule 84.04(d) which states that "the points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...."

Wilson's points do not state that the trial court erred. Nor do they state wherein or why the trial court's actions were erroneous. The arguments are directed to the counterclaim and B.B. Anderson's standing to maintain the counterclaim. Wilson was not a party to the counterclaim. Thus, Wilson's points are directed to a judgment entered against another party. He has preserved nothing for appeal. Rule 84.13(a). Accordingly, we affirm the judgment against him.

The facts in this case are complex as the property at issue was conveyed numerous times within a short period of time. The briefs offered little assistance. In addition, each of the appellants' legal files were incomplete. However, we were able to glean from the record the following facts in a light most favorable to the trial court's ruling.

On March 20, 1985, respondents, Mitchel and Catherine Reben (Rebens), loaned Charles S. Wilson, Jr., Vora T. Wilson, and Carol Jean Wilson (Wilsons) $35,000. At that time, the Wilsons executed a promissory note payable to respondents signed by the Wilsons individually. A.L. Beal Undertaking Company (A.L. Beal) executed a Deed of Trust for the property at issue as security for the aforesaid note. Charles S. Wilson, Jr. signed the Deed of Trust as "President of A.L. Beal Undertaking Company" by authority of its Board of Directors and Vora T. Wilson signed as vice-president. Wilson admitted the property at issue was pledged as collateral for the promissory note. Subsequently, A.L. Beal conveyed its interest in the property at issue to NPS via quitclaim deed dated August 3, 1989. Once again, Wilson signed the deed as president of A.L. Beal.

Apparently the Wilsons defaulted on the note and respondents filed their petition to quiet title against NPS on May 18, 1990. Five months later, NPS filed a motion to dismiss the quiet title action for failure to state a claim upon which relief could be granted. In this motion, NPS alleged that the Rebens possessed no interest in the property at issue because A.L. Beal was not a party to the original promissory note and thus respondents' Deed of Trust fails for lack of consideration. The record does not contain any order regarding this motion.

On March 20, 1991, responding to the quiet title petition, NPS denied all substantive allegations and again claimed that respondents failed to state a claim upon which relief could be granted. At the same time, NPS filed a counterclaim to the quiet title action challenging the Rebens' interest in the property at issue. Five days later, NPS conveyed the property at issue to NFHS via quitclaim deed. The record reflects that Wilson was not a signatory party to this conveyance. The President of NFHS admitted that he was also involved with NPS. Additional testimony indicates that NFHS managed the property at issue and the funeral business from August, 1989 until March, 1991. One day after receiving the property at issue from NPS, NFHS conveyed the property to B.B. Anderson via quitclaim deed with an attached notarized acknowledgement that Wilson signed as president of B.B. Anderson. At trial, Wilson, a mortician, admitted that he operated the mortuary business from the property at issue on a day to day basis.

On May 30, 1991, NPS filed a motion to add B.B. Anderson as a party defendant. One day later, NPS and B.B. Anderson filed their first amended counterclaim to the quiet title action which again alleged that respondents' interest in the property was defective because the Deed of Trust lacked consideration. In addition, an addendum to a contract of February 8, 1991 was attached as an exhibit to the counterclaim stating that NPS agreed to bear all responsibility for any claims and/or disputes arising from the property at issue thereby exonerating B.B. Anderson. The record does not include the February 8, 1991 contract to which the above addendum refers. The addendum stated "[Wilson] desire[d] to take title to the business and property in the name of [B.B. Anderson]." Testimony reveals that one possible reason for this was because Wilson had a judgment against him at the time of the transfer and thus any property in his individual name would be subject to a judgment lien. The addendum was signed by "Charles S. Wilson, Jr.—Buyer."

On June 5, 1991, respondents dismissed their quiet title action. One day later, the court granted NPS' motion to add B.B. Anderson as a party defendant. On June 13, 1991, respondents foreclosed on the property at issue and were the successful bidders at the foreclosure sale. B.B. Anderson was administratively dissolved on June 24, 1991.

On July 3, 1991, respondents filed a petition for ejectment against Wilson and NFHS based on the Trustee's Deed obtained at the foreclosure sale. At that time NFHS was registered as doing business as A.L. Beal Mortuaries and respondents claimed that Wilson and NFHS were in possession of the property at issue. Also on July 3, 1991, NPS, NFHS, B.B. Anderson, and A.L. Beal filed a second amended counterclaim to the dismissed quiet title action in which they plead the following counts: 1) quiet title; 2) wrongful foreclosure; 3) cancellation of the Trustee's Deed and setting aside the foreclosure sale; 4) slander of title; and 5) injunctive relief. The record reflects that Wilson did not join in the counterclaim.

In this counterclaim, Appellants again alleged that respondents' interest was defective and unenforceable as the Deed of Trust lacked consideration because A.L. Beal was a stranger to the promissory note. Without such interest, Appellants alleged that respondents wrongfully foreclosed on the promissory note and therefore the Trustee's Deed should have been cancelled. Appellants further alleged that without the Trustee's Deed, respondents had no interest in the property at issue and thus the ejectment action was meritless.

On August 28, 1991, the trial court granted Appellants' motion to consolidate the ejectment action and the second amended counterclaim. On October 18, 1991, NFHS replied to respondents' ejectment petition denying all averments and claiming that respondents failed to state a claim upon which relief could be granted because NFHS and Wilson were not in possession of the property at issue and therefore were not proper parties. The record does not reflect that Wilson filed any type of responsive pleading, although the trial court's findings of fact imply that such a pleading was filed. On January 30, 1992, respondents answered Appellants' second amended counterclaim denying all substantive allegations and claiming that none of the Appellants were a real party in interest and therefore, the counterclaim should be dismissed.

The consolidated actions were heard on March 31, 1992, and the trial court sustained respondents' motion to dismiss Appellants' second amended counterclaim with prejudice at the start of the trial. In response to appellants' request to make an offer of proof, the trial court suggested that appellants do so by written pleadings. Subsequently, Appellants filed a motion to dismiss or in the alternative, for summary judgment based on their claim that respondents possessed no interest in the property at issue because A.L. Beal was not a party to the promissory note and thus respondents had no right to foreclose on the property at issue. Additionally, NFHS filed its own motion to dismiss or in the alternative for summary judgment or in the alternative for a directed verdict. NFHS claimed it never possessed the property at issue and had sold the name A.L. Beal Mortuary to B.B. Anderson on or about February 23, 1991 and thus was not a proper party to the ejectment action.

The case was taken under submission and all parties were instructed to file written pleadings including proposed findings of fact and conclusions of law. On April 24, 1992, the trial court entered its findings of fact and conclusions of law. In its findings, the trial court found that: 1) Respondents were the lawful owners in fee of the property at issue, having acquired said ownership by a Trustee's Deed under foreclosure on June 13, 1991; 2) Wilson was, and continued to be, in possession of the property at issue either personally d/b/a A.L. Beal Mortuary or through the administratively dissolved B.B. Anderson; 3) Wilson or legal entities he controls have previously been in possession of and have done business in the property at issue under the names of A.L. Beal Undertaking Company, a Missouri corporation, A.L. Beal Funeral Homes, and B.B. Anderson Corp., a Missouri Corporation, d/b/a A.L. Beal Mortuary; 4) A.L. Beal forfeited its corporate charter in 1989; 5) B.B.

Anderson was administratively dissolved on June 24, 1991; 6) NFHS was not, nor is now, in possession of the property at issue; and 7) the fair market rental value of the property at issue was $500 per month.

The trial court then dismissed NFHS, leaving Wilson as the sole defendant, and awarded respondents possession of the property at issue and $500 per month rent for each month Wilson occupied the property since respondents filed their ejectment action on July 3, 1991. The trial court subsequently denied Wilson's motion for a new trial.

We also note that the record and respondents' brief indicate that both A.L. Beal and Wilson, individually, filed for bankruptcy. At the trial, following the dismissal of Appellants' counterclaim, Wilson's counsel advised the trial court of these bankruptcies and challenged the court's jurisdiction to hear the ejectment action. The trial court determined that the bankruptcy proceedings were closed and that the ejectment action was properly before it. Since the record contains nothing further, we are not in a position to review the effect, if any, of the bankruptcy proceedings.

■ Our standard of review in this court-tried case is that we shall sustain the trial court's judgment unless there is no substantial evidence to support it, or it is against the weight of evidence, or if the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc. 1976).

■ We first address Appellants' third point on appeal in which they contend the trial court erred in denying their motion to dismiss, or in the alternative, motion for summary judgment. We have previously held that the denial of either a motion to dismiss or of a motion for summary judgment is not a final judgment and therefore not reviewable. *St. Charles County v. Ross*, 718 S.W.2d 209, 210 (Mo.App.1986). Accordingly, we shall not review this point.

In their second point on appeal, Appellants contend that the trial court erred in finding that NFHS, NPS, A.L. Beal, and B.B. Anderson did not have standing to file the second amended counterclaim and sustaining the respondents' motion to dismiss Appel-

lants' second amended counterclaim. Appellants contend that the trial court abused its discretion and misapplied Missouri law.

While the trial court did not explicitly state the reason for dismissing the counterclaim, its findings and conclusions indicate that the dismissal was for lack of standing. Additionally, respondents' reply to the counterclaim alleges that none of Appellants were a real party in interest and the first few pages of the trial transcript reveal that respondents made an oral motion to dismiss because Appellants lacked standing to file the counterclaim. At trial, respondents argued that A.L. Beal, NPS, and NFHS had previously conveyed all interest in the property at issue and thus lacked standing to file the counterclaim. Additionally, they claimed that since B.B. Anderson was administratively dissolved, the counterclaim should have been filed by its statutory trustees. Appellants argued that the statutory sections relied on by respondents had been amended and repealed and no longer required statutory trustees. Appellants were correct in that sections 351.476, 351.484, and 351.486 R.S.Mo.Cum.Supp.1990 (all further statutory references shall be to R.S.Mo.Cum.Supp.1990 unless otherwise indicated) were all amended with an effective date of August 28, 1990. Section 351.525 was repealed effective May 29, 1991.

At the end of these arguments, the trial court granted respondents' motion to dismiss without explicitly stating a reason. The trial court further instructed respondents' counsel to "draw up a memo to the Court relative to the Court's ruling as to that motion before we conclude today." However, the record on appeal does not contain such a memo. Appellants attempted to argue issues raised in their counterclaim numerous times throughout the trial but each time the trial judge reminded them of his dismissal of the counterclaim and instructed them to make an offer of proof via written pleadings after the testimony.

■ We have repeatedly held that one who receives a quitclaim deed acquires only that which the grantor possessed and nothing else. *Mattingly v. Hudson*, 785 S.W.2d 320,

321 (Mo.App.1990). It follows that once a party conveys property via a deed, it no longer has any interest in the property and thus any actions brought by such a party should be dismissed. *Sadler v. Home Savings of America,* 733 S.W.2d 856, 858 (Mo. App.1987). Such is the case here. A.L. Beal, NPS, and NFHS all conveyed the property at issue via quitclaim deed, thereby relinquishing any interest or rights therein. Therefore, since these parties no longer had any interest in the property, the trial court did not err in dismissing their counterclaim. Further, A.L. Beal did not file an appeal.

It is undisputed that B.B. Anderson was administratively dissolved by the Secretary of State on June 24, 1991. In addition to providing the procedure by which the Secretary of State may administratively dissolve a corporation, § 351.486 provides, in pertinent part:

3. A corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs under section 351.476 . . .

Furthermore, § 351.476 provides, in pertinent part:

1. A dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including: . . .

(5) Doing every other act necessary to wind up and liquidate its business and affairs.

2. Dissolution of a corporation does not: . . .

(5) Prevent commencement of a proceeding by or against the corporation in its corporate name;

(6) Abate or suspend a proceeding pending by or against the corporation on the effective date of dissolution . . .

■ Recently, our Western District, construing these statutes, found that an administratively dissolved corporation may be sued in its corporate name. *Mabin Construction v. Historic Constructors,* 851 S.W.2d 98, 102–03 (Mo.App.1993). Likewise, the statutes clearly state that dissolution does not prevent commencement of a proceeding in its corporate name, or abate or suspend a proceeding originating prior to the effective date of the dissolution. Section 351.476.2(5, 6).

In their brief, respondents agree with this interpretation, but argue that the statutory authority to continue pending litigation presupposes that the corporation truly existed prior to dissolution. Respondents argue that here, B.B. Anderson was never a valid corporation because it failed to file its initial annual report within thirty days of filing its articles of incorporation as required by § 351.120.

■ We agree that § 351.120 requires a corporation to file an annual report within thirty days after the date of incorporation. We also note that § 351.484 allows the Secretary of State to commence dissolution proceedings, pursuant to § 351.486, if a corporation fails to file its annual report within thirty days after it is due. Respondents have not directed us to any statute or case which provides that such a corporation failed to exist. Nor has our research uncovered such authority.

■ B.B. Anderson was added as a party defendant on May 30, 1991 prior to being administratively dissolved on June 24, 1991. Appellants' first amended counterclaim, to which B.B. Anderson was a named defendant, was filed prior to the corporation's dissolution. Therefore, pursuant to § 351.476, B.B. Anderson could continue any pending litigation and commence new proceedings as part of the winding up of its business.

■ Ejectment is a possessory action. *Gilbert v. K.T.I., Inc.,* 765 S.W.2d 289, 293 (Mo.App.1988). Respondents contend they are the owners of and legally entitled to possession of the property at issue. However, if the allegations of defective title and wrongful foreclosure in the counterclaim are true, it would defeat respondents' right to possession. Since appellant, B.B. Anderson, had standing to litigate its counterclaim, the trial court erroneously applied the law.

Therefore, we reverse the trial court's order dismissing B.B. Anderson's second

amended counterclaim and remand to the trial court for further proceedings in accord with this opinion and affirm the judgment in all other respects.

Judgment affirmed in part, reversed and remanded in part.

CARL R. GAERTNER, P.J., and CRANE, J., concur.