Cindy Marie THOMPSON, Plaintiff–Respondent,

v.

CHASE MANHATTAN MORTGAGE CORPORATION, and Citibank, N.A., Defendants–Appellants,

Advanta Mortgage Corp. USA, and Kozeny & McCubbin Trustee Co., L.C., Defendants–Defendants.

No. 24521.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 30, 2002.

Motion for Rehearing and Transfer Denied Nov. 20, 2002.

Application for Transfer Denied Dec. 24, 2002.

See also 24 S.W.3d 751.

William L. Sauerwein, Shawn T. Briner, William L. Sauerwein & Associates, St. Louis, for appellants.

R. Scott Reid, Fredericktown, for respondent.

KENNETH W. SHRUM, Judge.

The trial court ruled that Plaintiff's judgment lien against her ex-husband's real estate was superior to the lien of a deed of trust held by Chase Manhattan Mortgage Corporation ("Chase Manhattan"). Further, the court ruled that when the sheriff levied execution on and publicly sold the real estate to Plaintiff to satisfy her judgment lien, the sale "extinguished" Chase Manhattan's deed of trust lien. Accordingly, the court enjoined Defendants from foreclosing or enforcing any rights under the subject deed of trust.[1] Moreover, the trial court quieted title to the real estate in Plaintiff. Two Defendants, Chase Manhattan and Citibank, appeal, and present multiple claims of trial court error. We affirm.

---

1. Defendants (other than Chase Manhattan) are Citibank, N.A. ("Citibank"), the attorney-in-fact or trustee appointed by Chase Manhattan when it bought the subject deed of trust; Advanta Mortgage Corp. U.S.A. ("Advanta"), servicing agent for Citibank; and Kozeny & McCubbin Trustee Company, L.C. ("K & M"), the first named successor trustee. When referring to each defendant individually, we do so as designated. When referring to those defendants who have appealed, we call them "Appellants." Collectively, we refer to all as "Defendants."

## FACTS

Plaintiff's marriage to Gary Lee Thompson ("ex-husband") was dissolved by a decree dated June 28, 1999.[2] Marital property (real and personal) valued at $232,912.79 was awarded to ex-husband. The real estate, a ten-acre tract, was subject to three deed of trust liens which ex-husband was ordered to pay. As further property division, the divorce court entered judgment for Plaintiff and against ex-husband for $102,000.

While the divorce decree was on appeal, ex-husband applied to First Choice Mortgage ("First Choice") for a loan. He intended to use a portion of the loan proceeds for partial payment on Plaintiff's judgment. In connection with the loan, First Choice required ex-husband to acquire "from Plaintiff a quitclaim deed of her interest in the Property so that he alone could borrow money with which to pay off the Judgment while using the Property as collateral."[3] When Plaintiff received the deed form, she would not sign it without consulting her attorney, Kenneth Seufert. Attorney Seufert altered the quitclaim deed by, *inter alia*, inserting the phrase "[s]ubject to judgments and liens of record[ ]" immediately beneath the legal description.[4] With the quitclaim deed thus altered, Plaintiff signed it, and Plaintiff's daughter delivered it to ex-husband. The parties stipulated that Plaintiff's intent in signing and delivering the quitclaim deed, as altered, "was to convey her ownership interest in the Property to Mr. Thompson and to preserve her lien interest in the Property."

Relying upon Plaintiff's quitclaim deed, First Choice loaned ex-husband $89,120 on February 26, 2000, and received a deed of trust on the subject real estate (the "First Choice deed of trust"). First Choice promptly recorded its deed of trust. The parties stipulated that First Choice intended to obtain a first lien priority against the ten-acre tract via this transaction, and First Choice "would not have completed the First Choice Mortgage Loan had Plaintiff not executed Plaintiff's Quitclaim Deed." Moreover, ex-husband intended to give First Choice a first lien deed of trust on the land.

The First Choice loan proceeds were used, *inter alia*, to (1) pay $42,000 to Plaintiff on her judgment lien, (2) satisfy the three deed of trust liens mentioned in the divorce decree (totalling $25,882), and (3) pay certain other marital debts assigned to ex-husband. When Plaintiff received the $42,000 payment, she "did not know: (1) who loaned [ex-husband] funds to make partial payment on Plaintiff's judgment, (2) the terms of [ex-husband's] loan; (3) the amount of [ex-husband's] loan; or (4) whether [ex-husband's] loan was secured by property other than the [ten-acre real estate tract]."

On May 15, 2000, Plaintiff instituted an effort to collect the $60,000 due on her judgment. She requested that the Iron County sheriff levy execution on ex-husband's real estate. Notice of the sheriff's sale was given to ex-husband and First

---

**2.** The dissolution decree was affirmed in *Thompson v. Thompson,* 24 S.W.3d 751 (Mo. App.2000).

**3.** Any quoted material in this recital of facts has been lifted verbatim from the written "Stipulation of Facts" upon which this case was tried.

**4.** As prepared, the quitclaim deed named both Plaintiff and her ex-husband as grantors, contained a pre-prepared space for ex-husband's signature, and contained a separate place where the ex-husband's signature could be notarized. Attorney Seufert also altered the quitclaim deed by striking through these parts of the quitclaim deed.

Choice. Notice thereof, however, was not given to "any of the Defendants since none of the assignments of the Deed of Trust had been recorded with the Iron County Recorder of Deeds." "Neither First Choice ... nor any of the Defendants attended the Sheriff's Sale or contacted [Plaintiff] or her attorney prior to the sale." At the sheriff's sale on June 28, 2000, Plaintiff bought the property for $55,000.

On December 21, 2000, K & M was appointed successor trustee under the deed of trust given to First Choice by ex-husband. K & M then scheduled a trustee's foreclosure sale for February 7, 2001. When Plaintiff read the published notice of foreclosure, she brought this lawsuit seeking (a) to enjoin the foreclosure, (b) to quiet title to the real estate, and (c) damages for wrongful foreclosure. After learning First Choice had sold the subject deed of trust, Plaintiff amended her petition and named Defendants as parties. The trial court enjoined Defendants as Plaintiff requested and quieted title in the real estate in Plaintiff. It denied Plaintiff's damage count and all relief sought by Defendants. This appeal followed.

## STANDARD OF REVIEW

■ In a court-tried case of this nature, our review is governed by Rule 84.13(d) (2002), and *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).[5] *U.S. v. Brooks*, 40 S.W.3d 411, 412 (Mo.App.2001). Thus, we will affirm the judgment of the trial court unless there is no evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32[1].

■ As this case was tried upon stipulated facts, we will not give deference to a trial judge's determination regarding credibility of witnesses. *Jarrell v. Director of Revenue*, 41 S.W.3d 42, 45[5] (Mo.App. 2001). Even so, the *Murphy v. Carron* standard of review still attends. In such cases, i.e., non-live witness trials, an appellate court must defer to the *facts*—not witness credibility—as found by the trial court in deciding if substantial evidence exists to support a judgment and in analyzing whether the judgment is against the weight of the evidence. *Jarrell*, 41 S.W.3d at 46[7]. "Stated otherwise, where facts essential to an element of a case are derived from non-live sources and are in conflict, appellate courts give deference to the trial court conclusions about those facts." *Id.* at 46[9].

## DISCUSSION AND DECISION

*POINT I: Did Quitclaim Deed Release Judgment Lien?*

■ Appellants' first point makes several arguments regarding why Plaintiff's quitclaim deed allegedly released her ex-husband's real estate from her judgment lien despite the language she inserted therein, i.e., "[s]ubject to judgments and liens of record." Based on these arguments, Appellants insist that the First Choice deed of trust was a first priority lien; the sheriff's deed conveyed the real estate subject to the First Choice deed of trust lien; and the trial court committed reversible error when it ruled otherwise.

First, Appellants rely on *DeWitt v. Am. Family Mut. Ins. Co.*, 667 S.W.2d 700, 704 (Mo.banc 1984) and *Stamatiou v. El Greco Studios, Inc.*, 898 S.W.2d 571, 576–77 (Mo. App.1995) (citing § 452.360.2), to argue that the dissolution decree operated to fully vest title to the subject real estate in ex-husband. Thus, according to Appellants, when Plaintiff signed and delivered the quitclaim deed her *only* interest in the

**5.** All rule references are to Supreme Court Rules (1999), unless otherwise indicated.

property was the judgment lien, and a quitclaim from her could only serve to release the real estate from her judgment lien.

Second, Appellants quote *Reasor v. Marshall*, 359 Mo. 130, 221 S.W.2d 111, 115 (1949) for the proposition that "[g]enerally a quit claim deed operates as a conveyance of any right, at law or equity, the grantor has[ ]" in the subject real estate. They also cite *Williams v. Reid*, 37 S.W.2d 537, 541 (1931), for the notion that "[t]o remise, release, and quitclaim designated land is generally understood to mean that the grantor *releases any interest* he may have in the land at the time." (Emphasis supplied.) They further rely on *Reben v. Wilson*, 861 S.W.2d 171, 176 (Mo.App.1993), where the court noted that one who "conveys property via a deed . . . no longer has any interest in the property." Relying on these principles, Appellants argue that a quitclaim deed operates more as an instrument of release than an instrument of conveyance and urges us to rule that the trial court erred when it found that Plaintiff's quitclaim deed did not release the ten-acre tract from her judgment lien. Continuing, Appellants insist that "the trial court erroneously declared and applied Missouri law in holding that [Plaintiff], by executing and delivering the Quit–Claim Deed—an instrument of release—preserved the only interest she held and advanced its priority to a status superior to that of the First Choice Deed of Trust."

Preliminarily, we note that Appellants have mischaracterized the trial court's finding. The trial court found "[t]hat Plaintiff, in executing a Quit–Claim Deed with reservation of judgments and liens of record, *effectively conveyed any marital interest she may have remaining in the subject property,* but specifically reserved any . . . interest she possessed pursuant to the Judgment entered July 1, 1999." (Emphasis supplied.) This finding implicitly recognizes what Appellants choose to ignore, namely, that ex-husband's loan with First Choice was closed while his divorce case was on appeal to this court. Although Plaintiff's appeal did not challenge the trial court's division of marital property, that was not something First Choice or anyone else could have learned by searching records at the Iron County courthouse. An Iron County record search would have shown a decree that awarded ex-husband ten acres of marital real estate, but would also have disclosed Plaintiff's notice of appeal. The notice of appeal would have informed the public, including First Choice, that some part or all of the judgment might be reversed.

■ Under the circumstances, Appellants are simply wrong when they assert that First Choice's insistence on a quitclaim deed from Plaintiff during the pendency of the dissolution appeal could only serve the purpose of releasing the subject real estate from her judgment lien. The trial court's implicit finding that *Plaintiff still had a potential ownership interest in the real estate* when she signed the deed and its express finding that Plaintiff's quitclaim "effectively conveyed any marital interest she may have remaining in the subject property[ ]" are not erroneous. Moreover, execution and delivery of a quitclaim deed does not signify that the grantor has any interest at all. *Webster Oil Co., Inc. v. McLean Hotels, Inc.,* 878 S.W.2d 892, 894 (Mo.App.1994). It simply indicates that the grantor is conveying whatever interest he or she has, subject to any clearly expressed qualification, reservation, or exception. *Id.; Walker v. Goodsill,* 54 Mo.App. 631, 635 (1893). Appellants' argument that Plaintiff's quitclaim deed could only serve to release the real estate from her judgment lien lacks merit.

Second, although the general rules found in *Reasor*, 221 S.W.2d at 115, *Williams*, 37 S.W.2d at 541, and *Reben*, 861 S.W.2d at 176 (as recounted above), are firmly established and sound, the factual context for their applicability is not present here. The quitclaim deeds at issue and analyzed in *Williams* and *Reben* contained no limiting language, whereas the grantor here declared that her conveyance was "[s]ubject to judgments and liens of record." Although the quitclaim deed in *Reasor* purported to reserve a life estate to the grantor, 221 S.W.2d at 113, that phrase and the possible import thereof was not at issue and played no part in the disposition of the *Reasor* case. *See* 221 S.W.2d at 115–16.

■ Putting the phrase "subject to" in a deed that conveys an interest in real estate is a qualification of the estate granted. *Busch v. Hurricane Deck Holding Co.*, 882 S.W.2d 723, 729 (Mo.App.1994); *Fairmont Foods Co. v. Skelly Oil Co.*, 616 S.W.2d 548, 553[5] (Mo.App.1981) (citing 23 Am. Jur.2d *Deeds* § 217). It has been stated that "the clearest and most common way to convey property as affected by encumbrances mentioned is to use the phrase 'subject to . . .' immediately after the legal description of the property granted." 18 Theodore H. Hellmuth, Missouri Practice: Real Estate Law–Transactions § 38 at 39 (2d ed.1998). A deed with such words of qualification, i.e., "subject to," acts as a conveyance of the grantor's interest "as affected by the incumbrances mentioned." *Walker*, 54 Mo.App. at 635.

■ Under the so-called "modern rule," a court's major task in construing a deed is to find the grantor's intent within the four corners of the instrument when it is possible to do so. *Petty v. Griffith*, 165 S.W.2d 412, 415 (Mo.1942); *Burk v. Ann W. Jones Co., Inc.*, 687 S.W.2d 582, 585[2] (Mo.App.1985). Courts are to disregard technicalities, and they are to treat all uncertainties in a deed as ambiguities to be resolved by resort to the grantor's intent as found in the deed itself, to circumstances leading up to and surrounding its execution, and the subject matter and situation of the parties as of that time. *Id.* at 585[3].

Here, the circumstances were that during the pendency of Plaintiff's appeal from a dissolution decree—a decree that included a $102,000 judgment against ex-husband—he (ex-husband) asked Plaintiff to sign a quitclaim deed for the ten acres the parties had owned as tenants by the entirety. Not only was the decree on appeal at the time, the decree did not expressly direct Plaintiff to sign and deliver a quitclaim deed (as was possible per Rule 74.07), nor did it specifically divest Plaintiff of her ownership interest as was possible under Rule 74.07.[6] Although ex-husband informed Plaintiff that he was trying to get a loan to "partially pay off" her judgment, there is no evidence that Plaintiff was told what she would get *if* she signed the quitclaim deed. This was the situation that attended when Plaintiff used "the clearest and most common way to convey property as affected by encumbrances" by inserting the phrase "subject to judgments and liens of record" in the deed. When considered in context, the language of the deed clearly shows Plaintiff intended to convey "any marital interest she may have remaining in the subject property, but specifically re-

6. Rule 74.07 empowers a court to order execution and delivery of a deed by a party and prescribes a procedure for enforcing compliance with its order. Moreover, Rule 74.07 provides that "[i]f real . . . property is within the state, the court may enter a judgment divesting the title of any party and vesting it in others in lieu of directing a conveyance thereof, and such judgment has the effect of a conveyance executed in due form of law."

served any ... interest she possessed pursuant to the Judgment." The trial court did not err in that finding.

■ In so holding, we do not ignore Appellants' additional arguments for reversal. For instance, Appellants repeat their claim that Plaintiff's only interest in the real estate was her judgment lien, and they then argue that "to create an exception for the only interest to be released makes the Quit–Claim Deed a nullity and renders it wholly inoperative." With Plaintiff's deed thus characterized, Appellants point out that Missouri law presumes that people do " 'not ... intend nullities by their solemn conveyances and if one construction will render a deed operative and a competing construction will render it wholly inoperative, the former is preferred if not unreasonable or legally impossible.' " *Mass. Gen. Life Ins. Co. v. Sellers,* 835 S.W.2d 475, 481 (Mo.App.1992) (citation omitted).

Despite Appellants' urging, the rule they lift from the *Sellers* case has no applicability here. As our earlier analysis suggests, Plaintiff's quitclaim deed was not a nullity because (a) the dissolution decree did not contain language that clearly vested title to this real estate in ex-husband, (b) a search of Iron County records would have shown Plaintiff's appeal of the judgment without disclosing if the property division was at issue on appeal, and (c) the quitclaim deed removed any qualms caused by lack of "divesting" language in the decree and eliminated any uncertainty created by the unresolved appeal.

■ In yet another argument, Appellants assert that the "very location" where Plaintiff put the qualifying language in the deed, i.e., beneath the description, demonstrates that the language was ineffective to preserve the judgment lien. Appellants cite *Jones v. Cox,* 629 S.W.2d 511 (Mo.App. 1981), where the court held that "if a clause written in after the description hopelessly conflicts with a clause located in a position usually employed to define and grant estates, the repugnancy may be ignored." *Id.* at 513. Relying on *Jones,* Appellants argue Plaintiff's placement of qualifying language beneath the description "should not have been held to contradict and render useless [other] language therein, through which [Plaintiff] agreed to 'REMISE, RELEASE, AND FOREVER QUIT CLAIM' the only interest she held in the Property." Appellants insist that "[t]he resulting conflict should have forced the trial judge to ignore the language inserted into the Quit–Claim Deed." We disagree.

■ A grantor's intent may be found anywhere in the deed and that intention will prevail no matter where it may appear, provided it is not contrary to some positive rule of law. *Petty,* 165 S.W.2d at 415; *Burk,* 687 S.W.2d at 585. Unlike the "hopeless" conflict created by the language inserted in the *Jones* deed, Plaintiff used "the clearest and most common way to convey property as affected by encumbrances" by inserting the phrase "subject to" immediately after the legal description. *See* 18 HELLMUTH, MISSOURI PRACTICE: Real Estate Law–Transactions § 38 at 39 (2d ed.1998). Appellants' reliance on *Jones* is misplaced, and their argument lacks merit.

■ Appellants make the additional argument—without citation to any relevant authority—that the limiting language used by Plaintiff "speaks neither with specificity nor of reservations or exceptions[;]" consequently, the trial court committed reversible error when it ruled that Plaintiff "specifically reserved any ... interest she possessed pursuant to the Judgment entered July 1, 1999." First, Appellants' presentation of this argument without citation to relevant authority or

explaining its absence preserves nothing for appeal. *Cooper v. Bluff City Mobile Home Sales,* 78 S.W.3d 157, 164[4,5] (Mo. App.2002). Second, had the argument been preserved, it would have been answered adversely to Appellants by observing that any confusion about the technical nature of the limiting language, i.e., whether the phrase "subject to" is a reservation or exception, would not obviate its effect, when as here, the intention was clear. *See Petty,* 165 S.W.2d at 414–15; *Schmidt v. Tipton,* 89 S.W.2d 569, 572–73 (Mo.App.1936); *Stout v. Frick,* 69 S.W.2d 677, 679–80 (Mo.App.1934). *See also* 18 HELLMUTH, MISSOURI PRACTICE: Real Estate Law–Transactions § 38 at 39 (2d ed.1998).

Appellants' last argument under Point I maintains the judgment is unsupported by substantial evidence and is against the weight of evidence. They argue that once Plaintiff signed and delivered the quitclaim deed, a rebuttable presumption arose that she intended to give up all of her interests, including the judgment lien, *see Aude v. Aude,* 28 S.W.2d 665 (Mo.banc 1930); that Plaintiff could only have rebutted this presumption by adducing evidence that she never intended for the quitclaim deed to release the judgment lien; and that Plaintiff failed to produce such evidence. This argument fails for two reasons. First, the deed at issue in *Aude* did not contain limiting language, nor otherwise deal with issues found here. The *Aude* case is not on point. More than that, Appellants' argument directly contradicts the parties' stipulation of facts. Specifically, the parties stipulated and agreed that Plaintiff's "intent in signing the quitclaim deed was to convey her ownership interest in the Property ... and to preserve her lien interest in the Property." When read in context, this stipulation provides clear and convincing evidence that Plaintiff, by signing the quitclaim deed, did not intend to release

her judgment lien and rebuts any presumption discussed in *Aude.* Appellants' argument to the contrary is rejected. To the extent the judgment for Plaintiff is based on the trial court's finding that Plaintiff's quitclaim deed effectively reserved her judgment lien against the subject real estate, the judgment is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares the law, nor misapplies the law. Point denied.

*POINT II: Judgment Inequitable Due To Plaintiff's Windfall*

Appellants' second point maintains the trial court erred as a matter of law in granting Plaintiff equitable relief, i.e., an injunction, because the result is that Plaintiff reaps a substantial and undeserved windfall. Appellants cite *Grommet v. Grommet,* 714 S.W.2d 747 (Mo.App.1986), *Sutton v. Schwartz,* 808 S.W.2d 15 (Mo. App.1991), and *Frago v. Sage,* 737 S.W.2d 482 (Mo.App.1987), for the proposition that to retain an undeserved windfall is "entirely inappropriate" when a party seeks equitable relief and this concept compels reversal here. We disagree. Although the maxims of equity cited in these cases are sound, they do not compel reversal in this case.

"Equity follows the law[.]" *Place v. P.M. Place Stores Co.,* 950 S.W.2d 862, 866[8] (Mo.App.1996). This means that no maxim of equity may be invoked to destroy an existing legal right, *Id.* at 866[7], nor can an equity court create rights that do not exist. *Fleming–Gilchrist Const. Co. v. McGonigle,* 338 Mo. 56, 89 S.W.2d 15, 18[1] (1935). Stated otherwise, "a court of equity may not depart from precedent and assume an unregulated power of administering abstract justice," *Linville v. Ripley,* 237 Mo.App. 1275, 173 S.W.2d 687, 690[7] (1943), or act mere-

ly upon its own concept of what is right or wrong in a particular case. *Ford v. Director of Revenue,* 11 S.W.3d 106, 110[4] (Mo.App.2000).

Here, Plaintiff obtained an existing legal right, i.e., a judgment lien against her ex-husband's real estate, via the divorce case. § 511.350, RSMo (1994). This lien commenced upon the entry of the judgment in the dissolution case. Rule 74.08. As explained earlier, the lien was not released by Plaintiff's quitclaim deed; accordingly, Plaintiff's lien achieved first priority once the three superior deed of trust liens were released and satisfied of record. The "windfall" of which Appellants complain refers to the fact that Plaintiff bought the property at a sheriff's sale for the high bid of $55,000 even though it had been valued during the divorce case at $115,000. This, however, was a public sale using procedures prescribed by statute and conducted in accordance with legal principles and precedents for conducting a sheriff's sale. First Choice and its trustee were notified of the sale, but did not attend. Appellants were not notified of the sheriff's sale by personal service or mail and did not attend the sale. They are in no position, however, to complain about the lack of personal notice as they never recorded their deed of trust assignment; consequently, neither the Plaintiff nor the sheriff could be charged with constructive notice of Appellants' interest in the property at the time of the sale. In sum, Appellants either mistakenly interpreted the legal effect of Plaintiff's quitclaim deed or failed to discover Plaintiff's judgment lien and then failed to ensure themselves of notice of the sheriff's sale by failing to record a notice of the deed of trust assignment.

Despite Appellants' failings and mistakes, they insist Plaintiff was not entitled to injunctive relief because she received a windfall via the sheriff's sale. We disagree. Ordinarily, equity will not relieve against a mistake of law, at least where the mistake is one of law pure and simple, nor will equity relieve against a mistake when the party complaining had within his or her reach the means of determining the true state of things. *Cozart v. Mazda Dist. Inc.,* 861 S.W.2d 347, 352[11] (Mo.App.1993) (quoting *Rhodes v. Rhodes' Estate,* 246 S.W.2d 98, 102 (Mo.App.1952); *S.G. Payne & Co. v. Nowak,* 465 S.W.2d 17, 20 (Mo.App.1971)). " 'Equity aids the vigilant, not those who slumber on their rights.' " *Townsend v. Maplewood Inv. & Loan Co.,* 351 Mo. 738, 173 S.W.2d 911, 913 (1943) (citation omitted). These maxims take on added strength where, as here, Appellants seek to invoke a maxim of equity to defeat Plaintiff's established legal right to levy execution on her ex-husband's property and bid on the property at the sheriff's sale. To rule that the trial court erred in granting Plaintiff injunctive relief because Plaintiff received a "substantial windfall" when she bought the property at a public sale would, on this record, require that we assume an unregulated power of administering abstract justice. *Linville,* 173 S.W.2d at 690. This we will not do. Point II is denied.

*POINT III: Does Doctrine of Equitable Subrogation Apply?*

Appellants' third point maintains the trial court erred when it did not, as a matter of law, give Chase Manhattan a lien on the ten-acre tract based on the doctrine of equitable subrogation. Specifically, they claim Chase Manhattan was entitled to a lien via subrogation principles for an amount equal to what was required to pay off the three deed of trust liens. To support their argument, Appellants rely exclusively on *Anison v. Rice,* 282 S.W.2d 497 (Mo.1955).

The *Anison* court noted that no general rule exists regarding when the equitable subrogation doctrine applies, and each case depends upon its particular facts. *Id.* at 503. However, the *Anison* court explained equitable subrogation, in a general sense, as follows:

"This equitable doctrine ... is enforced whenever the person making the payment stands in such relations to the premises or to the other parties that his interests, recognized either by law or by equity, can only be fully protected and maintained by regarding the transaction as an assignment to him, and the lien of the mortgage as being kept alive, either wholly or in part, for his security and benefit."

*Id.* at 503. Applying this principle, the *Anison* court imposed a lien for a lender (Anison) in this factual context: (1) the holder of a deed of trust was threatening foreclosure, (2) a lender (Anison) advanced money to pay off the first deed of trust at the request of one joint owner, and (3) payment by the lender equally benefited the other joint owner.

As Missouri courts developed and applied the doctrine of equitable subrogation, they classified it as "a fairly drastic remedy and is usually allowed only in extreme cases 'bordering on if not reaching the level of fraud.'" *Metmor Financial, Inc. v. Landoll Corp.*, 976 S.W.2d 454, 461[10] (Mo.App.1998) (quoting *Landmark Bank v. Ciaravino*, 752 S.W.2d 923, 928 (Mo. App.1988)). "For courts to allow equitable subrogation where no extreme circumstances are present would be nothing less than a judicial repeal of [§ ] 442.390 and would place the lending of money secured by real estate at great risk and insecurity." *Landmark Bank*, 752 S.W.2d at 928.

Although debtor's actions in *Anison* could justifiably be classified as "bordering" on fraud, we find no such "extreme circumstances" here, nor do we find con-duct by Plaintiff that bordered on or reached fraud. As such, *Anison* does not aid Appellants. To the contrary, we find the circumstances here to be more akin to those found in *Bunn v. Lindsay*, 95 Mo. 250, 7 S.W. 473 (1888), and *Landmark*, 752 S.W.2d at 923.

In the *Bunn* case, a lender provided funds to pay off a first deed of trust. The lender did not know about an intervening judgment lien of record. The Supreme Court of Missouri refused to allow equitable subrogation and stated its reasons as follows:

"Why did he [lender] not know [about the judgment lien]? That judgment was spread upon the public records in order that all who might deal with the property might know of its existence. He was not prevented from examining the record or lulled into security by a representation of Paramore, Lindsay, or anybody else. He did not know simply because neither he nor his agent looked that he might see and know. That plaintiff's security was less valuable than he expected it would be when he made the loan was the result of his own negligence, and not the fault, wrong, or mistake of any other person. Against the consequences of that negligence, for which he has no one to blame but himself, a court of equity cannot relieve him by interfering with the legal rights of others who are without fault."

*Id.* at 476.

In *Landmark*, 752 S.W.2d 923, the Danzigs borrowed money from Landmark Bank and secured the loan with a deed of trust on real estate. The Danzigs used the money borrowed from Landmark to pay off a second lien on the property. A title company used by Landmark failed to find a third lien on the property; consequently, Landmark ended up with a third lien, rather than the second intended by it. Landmark argued for equitable subrogation,

i.e., that as a matter of equity it should be given a second position as intended. The Eastern District Court of Appeals disagreed, saying that no Missouri case exists in which subrogation has been ordered and a lender allowed "to advance ahead of a recorded lien in the absence of complicity by the superior lien holder lender in obtaining the loan." *Id.* at 928. The third lien holder in the *Landmark* case was "totally innocent of any complicity in Landmark's mistake[,]" and this fact was cited as a reason for affirming the trial court's denial of Landmark's claim of equitable subrogation. *Id.* at 928–29.

Here, as in *Bunn* and *Landmark*, the dilemma of the parties claiming entitlement to equitable subrogation was caused by their failure to properly ascertain the state of the borrower's title, of which they were presumed to have knowledge. *See Landmark*, 752 S.W.2d at 928–29. There is no evidence Plaintiff prevented Defendants from examining the record or lulled them into any false sense of security by any representations regarding Plaintiff's judgment lien. *See Bunn*, 7 S.W. at 476. If Defendants did not know about Plaintiff's judgment lien, then it is reasonably inferable that neither they, nor their agents, "looked that [they] might see and know[,]" and their lack of knowledge "was the result of [their] own negligence, and not the fault, wrong, or mistake of any other person." *Id.* Moreover, on this record, the trial court could have reasonably inferred Defendants' failure to attend the sheriff's sale and protect their interest by buying the property was their own fault, and not the fault, wrong, or mistake of anyone else. *Id.* Plaintiff was without fault, her conduct did not border on or approach fraud, and no "extreme circumstances" as were shown in *Anison* exist here; consequently, the trial court did not err when it refused to interfere with Plaintiff's legal rights by using an equitable subrogation theory to relieve Defendants

from their negligence and mistakes. *Id.; Landmark*, 752 S.W.2d at 928. Point III is denied.

*POINT IV: Did Plaintiff's Quitclaim Deed Waive Her Judgment Lien?*

 Appellants' fourth point argues for reversal based on "waiver" theory. They claim Plaintiff, by signing and delivering the quitclaim deed, "waived and released the judgment lien in order to allow [ex-husband] to refinance the property and pay . . . her $42,000." In making this argument, Appellants correctly point out that under Missouri law "[t]he holder of a prior lien may waive its priority either expressly or impliedly[,]" *Genesis Eng'g Co. Inc. v. Hueser*, 829 S.W.2d 579, 580 (Mo.App.1992), and waiver may be "found in either words or actions." *Estate of Hayes*, 941 S.W.2d 630, 633[7] (Mo.App. 1997). Appellants insist that Plaintiff's conduct, i.e., signing and delivering the deed with full knowledge her ex-husband was getting a loan so he could make partial payment on her judgment, "clearly demonstrated a knowing and purposeful relinquishment of the priority of the Judgment Lien as against the First Choice Deed of Trust." Appellants assert that the trial court's finding that there was no waiver "is without substantial evidence and [is] in fact against the weight of the evidence."

As we understand it, Appellants do not claim any express waiver by Plaintiff, but rather that Plaintiff's conduct should be interpreted as an implied waiver of her judgment lien. We disagree.

 Waiver is the intentional relinquishment of a known right. *Investors Title Co. v. Chicago Title Ins. Co.*, 983 S.W.2d 533, 537–38[9] (Mo.App.1998). "It involves both knowledge and intent." *MCI v. City of St. Louis*, 941 S.W.2d 634, 639[4] (Mo.App.1997). For conduct to rise to the level of waiver, "the conduct must be clear, unequivocal, and decisive, showing a purpose to relinquish the right." *Id.*

at 640[5]. Stated otherwise, "the conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible." *Investors Title*, 983 S.W.2d at 538[10].

Here, Plaintiff's conduct was "manifestly consistent with and indicative" of her intent to *preserve* her judgment lien, not renounce the lien as Appellants contend. This is found in the fact that Plaintiff used "the clearest and most common way to convey property as affected by encumbrances" by inserting in the deed the phrase "subject to judgments and liens of record." More than that, Defendants stipulated that "Plaintiff's intent in signing the quitclaim deed was ... to preserve her lien interest in the Property." On this record, the trial court's holding that "Plaintiff unequivocally did not waive her interest in her lien expressly or impliedly" is supported by substantial evidence and is not against the weight of the evidence. No error of law appears. Point denied.

*POINT V: Applicability Of Equitable Estoppel Doctrine*

Appellants' fifth point asserts that the "trial court's judgment [denying Defendants' equitable estoppel defense] is without substantial evidence and [is] against the weight of evidence." They argue that undisputed evidence established that First Choice relied on Plaintiff's execution of the quitclaim deed as a precursor to making the loan to ex-husband, and Plaintiff's act of signing and delivering the deed was plainly inconsistent with her later assertion that her judgment lien had priority over the First Choice deed of trust. Based on that argument, Appellants insist the "court wrongfully permitted [Plaintiff] to contradict and repudiate her prior actions ... and erroneously prevented [Defendants] from asserting the defense of estoppel."

"Estoppels are not favorites of the law and will not be invoked lightly." *Investors Title*, 983 S.W.2d at 537[4]. A party asserting estoppel as a defense must prove: "First, an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act." *Van Kampen v. Kauffman*, 685 S.W.2d 619, 625[2] (Mo.App.1985). Moreover,

"[t]he party asserting an estoppel bears the burden of proving it. Every fact essential to create it must be established by clear and satisfactory evidence. One cannot set up another's act or conduct as the ground of an estoppel unless the one claiming it be misled or deceived by such act or conduct, nor can he set it up where he knew or had the same means of knowledge as the other to the truth."

*Id.* at 625[3,4,5] (citations omitted).

Here, Plaintiff never made a misleading or inconsistent statement or misrepresented her intent in executing and delivering the quitclaim deed. " '[T]he doctrine of estoppel contemplates the estopped party misrepresented a material fact.' " *Rooks v. Lincoln County Farmers Fire & Lightning Mut. Ins.*, 830 S.W.2d 507, 511 (Mo.App.1992) (quoting *Legler v. Meriwether*, 391 S.W.2d 599, 602 (Mo.App. 1965)). Her involvement in her ex-husband's loan transaction was limited to signing and delivering the deed after she had revised the deed. In revising it, Plaintiff used "the clearest and most common way to convey property as affected by encumbrances[;]" consequently, the quitclaim deed was not an affirmative misrepresentation regarding the status of her judgment lien.

Further, since First Choice demanded the quitclaim deed as a condition to loan-

ing ex-husband money, it is reasonable to infer that First Choice had a copy of the quitclaim deed, and that Defendants were presumptively aware of its terms. As such, Defendants (the parties asserting estoppel) had the same means of knowledge as anyone else regarding the limiting language in the deed; thus, estoppel was not available. *Van Kampen,* 685 S.W.2d at 625[5].

In sum, this record does not reveal any acts by Plaintiff that were inconsistent with the position she takes in this suit, i.e., that her quitclaim deed did not release ex-husband's property from the judgment lien. By inserting the limiting language in the quitclaim deed, Plaintiff intended to preserve the priority of her judgment lien. Her acceptance of $42,000 from her ex-husband on a $102,000 judgment is not inconsistent with her openly avowed intent to preserve her judgment lien. The trial court's ruling that "estoppel does not lie" is supported by substantial evidence and is not against the weight of the evidence. Point V is denied.

*POINT VI: Equitable Lien Argument*

■ In Appellants' sixth and final point, they insist the trial court erred in rejecting their claim of entitlement to an equitable lien. We disagree.

■ To establish an equitable lien a party must prove "(1) a duty or obligation owed by one person to another; (2) a res to which that obligation fastens and which can be identified; and (3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation." *First American Title Ins. Co. v. Birdsong,* 31 S.W.3d 531, 535[5] n. 9 (Mo.App.2000).

To recite the elements of an equitable lien in the factual context of this case demonstrates their inapplicability. Since Plaintiff was not indebted to or otherwise obligated to Defendants for anything, she had no duty or obligation to Defendants. As such, Defendants have failed to establish the first element of an equitable lien.

Second, Defendants stipulated that "Plaintiff's intent in signing the quit claim deed was to convey her ownership interest in the Property to [ex-husband] and to preserve her lien interest in the Property." That concession by Defendants directly contradicts Appellants' argument that Plaintiff, by making and delivering the deed so ex-husband could get a loan, intended for the real estate to serve as first lien collateral for the First Choice loan. The trial court did not err when it concluded Defendants were not entitled to an equitable lien. Point VI is denied.

The judgment of the trial court is affirmed.

PREWITT, P.J., and RAHMEYER, C.J., concurs.